**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CROUSE HEALTH HOSPITAL, INC.**,
736 Irving Ave
Syracuse, NY 13210

       *Plaintiff*,

  v.

**UNITED STATES SMALL BUSINESS ADMINISTRATION**, 409 3rd St., SW, Washington, DC, 20416;

     *and*

**ISABELLA CASILLAS GUZMAN**, *in her official capacity as Administrator*, U.S. Small Business Administration, 409 3rd St., SW, Washington, DC, 20416

       *Defendants*.

Civil Action No.: 5:23-CV-00615
(BKS/ATB)

---

**<u>Defendants' Local Rule 56.1(b) Response to Plaintiff's Statement of Material Facts</u>**

Pursuant to Local Rule 56.1(b), Defendants United States Small Business Administration ("SBA") and Isabella Casillas Guzman, in her official capacity, (collectively, "Defendants") submit the following statement in response to Plaintiff Crouse Health Hospital, Inc.'s ("Crouse") Local Rule 56.1(a) Statement of Material Facts. In accordance with Local Rule 56.1(b), Defendants' Response mirrors Crouse's Local Rule 56.1(a) statement and responds to its factual assertions in matching numbered paragraphs.[1]

---

[1] Citations to filings on the Court's docket are to the pagination generated by CM/ECF. Citations to "JA__" refer to the joint appendix of discovery materials, *see* Dkt. 62-2, and refer to the PDF pagination. Citations to "SBA____" refer to the Certified Administrative Record. Citations to the Declaration of Martin Andrews submitted in connection with Defendants' cross-motion for summary judgment are to the "Andrews Decl."

1

***The CARES Act and the Paycheck Protection Program***

1.      The CARES Act was enacted and signed into law on March 27, 2020. *See* Pub. Law 116-136, 134 Stat. 286, § 1102 (hereafter the "CARES Act").

**RESPONSE:  Paragraph 1 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 1 is denied to the extent it is inconsistent with the terms of the cited statute.**

2.      The CARES Act established the Paycheck Protection Program ("PPP"), a forgivable loan program within the Small Business Act's ("SB Act") Section 7(a) loan programs, whereby a borrower could obtain a PPP loan and, if used to pay eligible expenses, the loan would be forgiven and be treated as a "grant." CARES Act, § 1106 (describing forgiveness); 116th Cong. Rec., Vol. 116-56, H1846 (Rep. McCarthy, R-CA).

**RESPONSE: Paragraph 2 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 2 is denied to the extent it is inconsistent with the terms of the cited statute.  In particular, the implication that PPP loans were intended as "grants" is specifically denied.  *See* Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286–94 (2020) (codified at 15 U.S.C. § 636(a)(36)) (providing for PPP "loans").**

3.      Congress initially appropriated $349 billion to SBA for "the cost of guaranteed loans as authorized under paragraph (36) of section 7(a) of the [SB Act] (15 U.S.C. 636(a)), as added by section 1102(a) of" the CARES Act. CARES Act, § 1107(a)(1).

**RESPONSE: Paragraph 3 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 3 is denied to the extent it is inconsistent with the terms of the cited statute.**

4.      The appropriations were "authorized for commitments for general business loans authorized under section 7(a) of the [SB Act], including loans made under paragraph (36) of such section, as added by subsection (a)" through June 30, 2020. *See* CARES Act, § 1102(b)(1). Congress extended this authorization through August 8, 2020. *See* Pub. Law 116-147, 134 Stat. 660, § 1 (Jul. 4, 2020).

**RESPONSE: Paragraph 4 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 4 is denied to the extent it is inconsistent with the terms of the cited statute.**

5.      In April 2020, Congress appropriated an additional $310 billion to SBA for PPP loans. *See* Paycheck Protection Program and Health Care Enhancement Act, Pub. Law 116-139, 134 Stat. 620, § 101(a) (Apr. 24, 2020) (hereafter the "Enhancement Act").

**RESPONSE: Paragraph 5 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 5 is denied to the extent it is inconsistent with the terms of the cited statute.**

3

**Section 7(a) Loans Before the CARES Act**

6.      Section 3(a) of the SB Act, 15 U.S.C. § 632, is the "Definitions" section of the act.

**RESPONSE: Paragraph 6 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 6 is denied to the extent it is inconsistent with the terms of the cited statute.**

7.      Section 3(a) defines "small business concerns" "in general" as "one which is independently owned and operated and which is not dominant in its field of operation." 15 U.S.C. § 632(a)(1).

**RESPONSE: Paragraph 7 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 7 is denied to the extent it is inconsistent with the terms of the cited statute.**

8.      Section 3(a)(2) authorizes SBA to adopt "[i]n addition to the criteria specified in paragraph [3(a)(1)] and subject to the requirements specified under subparagraph (C) . . . detailed definitions or standards by which a business concern may be determined to be a small business concern for purposes of this chapter or any other Act." 15 U.S.C. § 632(a)(2).

**RESPONSE: Paragraph 8 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed**

4

necessary, **Paragraph 8 is denied to the extent it is inconsistent with the terms of the cited statute.**

9.      SBA has adopted rules defining industry specific size standards, measured by number of employees or by annual receipts. *See* 13 C.F.R. §§ 120.100(d), 121.201.

**RESPONSE: Paragraph 9 does not constitute a statement of material fact; rather, it is Crouse's characterization of 13 C.F.R. §§ 120.100(d) and 121.201, to which the Court is respectfully referred for a complete and accurate statement of their contents. If a response is deemed necessary, Paragraph 9 is denied to the extent it is inconsistent with the terms of the cited regulations.**

10.      SBA has adopted a rule defining "business concern" as a business that is "organized for profit." 13 C.F.R. § 121.105(a)(1).

**RESPONSE:  Paragraph 10 does not constitute a statement of material fact; rather, it is Crouse's characterization of 13 C.F.R. § 121.105(a)(1), to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 10 is denied to the extent it is inconsistent with the terms of the cited regulation.**

11.      SBA has adopted a rule declaring "non-profit businesses" ineligible for SBA business loans. 13 C.F.R. § 120.110(a).

**RESPONSE: Paragraph 11 does not constitute a statement of material fact; rather, it is Crouse's characterization of 13 C.F.R. § 120.110(a), to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 11 is denied to the extent it is inconsistent with the terms of the cited regulation.**

12.     Section 3(a)(5)(A) of the SB Act authorizes the SBA to "establish an alternative size standard for applicants for business loans under section 636(a) [i.e., section 7(a)] of this title . . . that uses maximum tangible net worth and average net income as an alternative to the use of industry standards." 15 U.S.C. § 632(a)(5)(A). Congress imposed an "interim rule" under this section that would remain in effect until SBA adopted a different rule, as follows:

> Until the date on which the alternative size standard established under subparagraph (A) is in effect, an applicant for a business loan under section 636(a) of this title . . . may be eligible for such a loan if—
>
>> (i)     the maximum tangible net worth of the applicant is not more than $15,000,000; and
>>
>> (ii)    the average net income after Federal income taxes (excluding any carry-over losses) of the applicant for the 2 full fiscal years before the date of the application is not more than $5,000,000.

15 U.S.C. § 632(a)(5)(B) (hereafter the "Alternative Size Standard").

**RESPONSE: Paragraph 12 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 12 is denied to the extent it is inconsistent with the terms of the cited statute.**

13.     In a September 29, 2010 "Information Notice," SBA announced that the interim rule described in Section 3(a)(5)(B) would replace any pre-existing alternative size standard based on net worth and average income and would remain the rule "until such time as SBA establishes a permanent alternative size standard." SBA, Information Notice 5000-1175 (Sep. 29, 2010).

**RESPONSE: Paragraph 13 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited SBA Information Notice 5000-1175, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is**

**deemed necessary, Paragraph 13 is denied to the extent it is inconsistent with the terms of the cited SBA Information Notice 5000-1175.**

14.    On February 15, 2024, SBA published a notice of final rule in the Federal Register which adopted, effective March 18, 2024, an alternative size standard based on Section 3(a)(5)(B) of the SB Act, but adjusted by 34.46% to account for inflation. *See* 89 FR 11703, 11703–11704 (Feb. 15, 2024). That rule states, in pertinent part:

> (b) For 7(a) Business Loans and Development Company programs, an applicant business concern must meet one of the following standards:
>
>> (2) Including its affiliates, tangible net worth not in excess of $20 million, and average net income after Federal income taxes (excluding any carry over losses) for the preceding two completed fiscal years not in excess of $6.5 million.

89 FR at 11713 (as codified at 13 C.F.R. § 121.301(b)) (hereafter the "2024 Alternative Standard").

**RESPONSE: Paragraph 14 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 14 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

15.    The SBA stated that the 2024 Alternative Standard "does not have retroactive or preemptive effect." 89 FR at 11712.

**RESPONSE: Paragraph 15 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 15 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

16.     Prior to adopting the 2024 Alternative Standard, SBA had not adopted changes to the interim rule set forth in Section 3(a)(5)(B), i.e., the Alternative Size Standard. *See* 89 FR at 11704 (explaining how SBA had yet to adopt a different alternative size standard, but had sought public comment in 2018 and in 2023 to adopt the statutory version as "the permanent alternative size standard" subject to inflation adjustments).

**RESPONSE: Paragraph 16 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 16 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

### The CARES Act and the PPP Expand Section 7(a)

17.     The PPP was enacted within the existing structure of Section 7(a). *See* CARES Act, § 1102(a) ("Section 7(a) of the Small Business Act (15 U.S.C. 636(a)) is amended").

**RESPONSE: Paragraph 17 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 17 is denied to the extent it is inconsistent with the terms of the cited statute.**

18.     The PPP "went beyond traditional 7(a) eligibilities" and included nonprofit organizations among those eligible to obtain a PPP loan. 116th Cong. Rec., Vol 166-59, S2030 (Mar. 25, 2020) (Sen. Cardin, D-MD).

**RESPONSE: Paragraph 18 does not constitute a statement of material fact; rather, it is Crouse's characterization of the Congressional Record, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed**

8

necessary, **Paragraph 18 is denied to the extent it is inconsistent with the cited Congressional Record.**

19. The CARES Act defined "nonprofit organization" as "an organization that is described in section 501(c)(3) of title 26 and that is exempt from taxation under section 501(a) of title 26." CARES Act, § 1102(a)(2)(36)(A)(vii).

**RESPONSE: Paragraph 19 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 19 is denied to the extent it is inconsistent with the terms of the cited statute.**

20. The CARES Act defined "eligible recipient" as "an individual or entity that is eligible to receive a covered loan." CARES Act, § 1102(a)(2)(36)(A)(iv).

**RESPONSE: Paragraph 20 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 20 is denied to the extent it is inconsistent with the terms of the cited statute.**

21. A "covered loan" was defined as "a loan made under this paragraph during the covered period." *Id.*, § 1102(a)(2)(36)(A)(ii).

**RESPONSE: Paragraph 21 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 21 is denied to the extent it is inconsistent with the terms of the cited statute.**

22. The "covered period" was defined as "February 15, 2020 [to] June 30, 2021." 15 U.S.C. § 636(a)(36)(A)(iii) (as amended).

**RESPONSE: Paragraph 22 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 22 is denied to the extent it is inconsistent with the terms of the cited statute.**

23.     The CARES Act described "Increased eligibility for certain small businesses and organizations" as follows:

(D) Increased eligibility for certain small businesses and organizations.—

(i)      In general.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of—

(I)  500 employees; or

(II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.

CARES Act, § 1102(a)(2)(36)(D)(i).

**RESPONSE: Paragraph 23 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 23 is denied to the extent it is inconsistent with the terms of the cited statute.**

24.     An "eligible recipient" may obtain a PPP loan up to a statutory maximum, defined as the lesser of (1) $10,000,000 or (2) an amount derived from a formula based on the "average total monthly payments by the applicant for payroll costs" during a set period. *Id.*, § 1102(a)(2)(36)(E).

**RESPONSE: Paragraph 24 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 24 is denied to the extent it is inconsistent with the terms of the cited statute.**

25.     PPP loans are low-interest loans to "an eligible recipient" that may be used for payroll costs and certain other allowable costs, as defined in the CARES Act. *See id.*, § 1102(a)(2)(36)(F).

**RESPONSE: Paragraph 25 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 25 is denied to the extent it is inconsistent with the terms of the cited statute.**

26.     PPP loans are low-interest loans to "an eligible recipient" that may be used for payroll costs and certain other allowable costs, as defined in the CARES Act. *See id.*, § 1102(a)(2)(36)(F).

**RESPONSE: Paragraph 26 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 26 is denied to the extent it is inconsistent with the terms of the cited statute.**

27.     SBA guarantees 100 percent of PPP "covered loans" as follows: "In an agreement to participate in a loan on a deferred basis under paragraph (36), the participation by the Administration shall be 100 percent." CARES Act, § 1102(a)(1)(B) (codified in 15 U.S.C. § 636(a)(2)(F)); *see also* 15 U.S.C. § 636(a) ("financings may be made either directly or

in cooperation with banks or other financial institutions through agreements to participate on . . .

[a] deferred (guaranteed) basis").

**RESPONSE: Paragraph 27 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 27 is denied to the extent it is inconsistent with the terms of the cited statute.**

28.    The SBA's guarantee applies regardless of whether a PPP borrower is later determined to be ineligible for the loan. *See* CARES Act, § 1102(a)(1)(B) (SBA's participation in PPP loans "shall be 100 percent").

**RESPONSE: Paragraph 28 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 28 is denied to the extent it is inconsistent with the terms of the cited statute.**

29.    The CARES Act further states that "Except as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." CARES Act, § 1102(a)(2)(36)(B).

**RESPONSE: Paragraph 29 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 29 is denied to the extent it is inconsistent with the terms of the cited statute.**

30.    The CARES Act provides that SBA's "provisions applicable to affiliations under section 121.103 of title 13, Code of Federal Regulations, or any successor regulation, are waived with respect to eligibility for a covered loan" for several types of "business concerns." CARES

Act, § 1102(a)(2)(36)(D)(iv). The CARES Act explicitly states that "section 121.103 [affiliation provisions] . . . shall apply with respect to a nonprofit organization and a veterans organization." *Id.*, § 1102(a)(2)(36)(D)(vi).

**RESPONSE: Paragraph 30 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 30 is denied to the extent it is inconsistent with the terms of the cited statute.**

31.     The CARES Act provides that "the requirement that a small business concern is unable to obtain credit elsewhere, as defined in section 632(h) [i.e., section 3(a)(h) of this title], shall not apply to a covered loan." *Id.*, § 1102(a)(2)(36)(I).

**RESPONSE: Paragraph 31 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 31 is denied to the extent it is inconsistent with the terms of the cited statute.**

32.     The CARES Act also included a "Waiver of [P]ersonal [G]uarantee [R]equirement," providing that "with respect to a covered loan—(i) no personal guarantee shall be required for the covered loan; and (ii) no collateral shall be required for the covered loan," thereby waiving existing Section 7(a) requirements set forth in SBA rules 13 C.F.R. § 120.160. CARES Act, § 1102(a)(2)(36)(J).

**RESPONSE: Paragraph 32 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 32 is denied to the extent it is inconsistent with the terms of the cited statute.**

13

33.    The CARES Act also waived certain fees traditionally applicable to Section 7(a) loans. *See id.*, § 1102(a)(2)(36)(H).

**RESPONSE: Paragraph 33 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 33 is denied to the extent it is inconsistent with the terms of the cited statute.**

### Later Amendments to the CARES Act and the PPP

34.    On December 27, 2020, Congress adopted, as part of an appropriations bill, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, Pub. Law 116-260, 134 Stat. 1993 (Dec. 27, 2020) (the "Economic Aid Act"). Pub. Law 116-260, 134 Stat. 1993, tit. 3 § 301 *et seq.* (Dec. 27, 2020).

**RESPONSE: Paragraph 34 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 34 is denied to the extent it is inconsistent with the terms of the cited statute.**

35.    The Economic Aid Act appropriated additional funds to the PPP for a total of $806,450,000,000 and further extended the PPP through March 31, 2021. *See id.*, 134 Stat. 2019, tit. 3 § 323(a).

**RESPONSE: Paragraph 35 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 35 is denied to the extent it is inconsistent with the terms of the cited statute.**

36.    The Economic Aid Act also created "Second Draw" PPP loans for certain, defined types of borrowers. *See id.*, 134 Stat. 2001, tit. 3 § 311. "Second Draw" PPP loans are distinct from the PPP loans authorized under the CARES Act prior to enactment of the Economic Aid Act, which are referred to as "First Draw" PPP loans. *See id.*

**RESPONSE: Paragraph 36 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 36 is denied to the extent it is inconsistent with the terms of the cited statute.**

37.    The Economic Aid Act provided for and clarified the eligibility of certain entities for First Draw PPP loans, including 501(c)(6) organized entities, destination marketing organizations, news organizations, farmers and ranchers, seasonal employers, and housing cooperatives. *See id.*, 134 Stat. 2008–2015, tit. 3 §§ 313–318.

**RESPONSE: Paragraph 37 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 37 is denied to the extent it is inconsistent with the terms of the cited statute.**

38.    The Economic Aid Act also established that "a business or organization that was not in operation on February 15, 2020 shall not be eligible for a loan under this paragraph," which prohibition would apply to any PPP loan made "before, on, or after the date of enactment of" the Economic Aid Act. *See id.*, 134 Stat. 2000, tit. 3 § 310.

**RESPONSE: Paragraph 38 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for**

**a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 38 is denied to the extent it is inconsistent with the terms of the cited statute.**

39.     The Economic Aid Act did not amend, waive, or refer to the Alternative Size Standard codified in Section 3(a)(5)(B) of the SB Act. *See id.*

**RESPONSE: Paragraph 39 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 39 is denied to the extent it is inconsistent with the terms of the cited statute.**

40.     The American Rescue Plan Act, Pub. Law 117-2 was enacted on March 11, 2021 ("ARPA"). Pub. Law 117-2, 135 Stat. 4 (Mar. 11, 2021).

**RESPONSE: Paragraph 40 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 40 is denied to the extent it is inconsistent with the terms of the cited statute.**

41.     ARPA amended the CARES Act to include a definition for "additional covered nonprofit entity," which would expand the scope of the PPP to include other tax-exempt entities under Internal Revenue Code Section 501(c). *See id.*, 135 Stat. 82.

**RESPONSE: Paragraph 41 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 41 is denied to the extent it is inconsistent with the terms of the cited statute.**

42.     ARPA also expanded eligibility for all nonprofits with more than one physical location, providing: "a nonprofit organization shall be eligible to receive a covered loan if the

16

nonprofit organization employs not more than 500 employees per physical location of the organization" (the "ARPA Location Rule"). *See id.*, 135 Stat. 82.

**RESPONSE: Paragraph 42 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 42 is denied to the extent it is inconsistent with the terms of the cited statute.**

43.    ARPA did not amend, waive, or refer to the Alternative Size Standard codified in Section 3(a)(5)(B) of the SB Act. *See id.*

**RESPONSE: Paragraph 43 does not constitute a statement of material fact; rather, it is Crouse's characterization of a federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 43 is denied to the extent it is inconsistent with the terms of the cited statute.**

### *SBA's Rules and Guidance Concerning the PPP*

44.    SBA adopted a series of "Interim Final Rules" ("IFR") that were published on SBA's website and in the Federal Register. (*See* Comp. ¶ 36.)

**RESPONSE: Admit.**

45.    Separately, SBA published guidance as "Frequently Asked Questions," which were published on SBA's website. *See* SBA, Paycheck Protection Program Frequently Asked Questions (available at: https://www.sba.gov/document/support-faq-ppp-borrowers-lenders) (hereafter cited as "SBA FAQ").

**RESPONSE: Admit.**

46.    SBA's first IFR was adopted on April 2, 2020 and published in the Federal Register on April 15, 2020 (the "First IFR"). *See* 85 FR 20811 (Apr. 15, 2020).

**RESPONSE: Paragraph 46 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 46 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

47.     The First IFR states under the heading "2. What do borrowers need to know and do?" and "a. Am I eligible," the following:

> You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
>
> > i. You are:
> >     A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or
> >     B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and
> > ii. You were in operation on February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC.

85 FR at 20812.

**RESPONSE: Paragraph 47 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 47 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

18

48.     The First IFR also describes when a business may be "ineligible" for a PPP loan. *See id.* Those are identified as: (i) engagement in illegal activity under Federal, state, or local law; (ii) a "household employer" (i.e., an individual who employs a nanny or housekeeper); (iii) an applicant who has an owner of 20% or more equity that is incarcerated, on probation, on parole, under indictment, or subject to other formal criminal charges, or who has been convicted of a felony within five years; or (iv) the applicant, or any owner, has obtained an SBA loan or other federal loan that is in, or was in, default within seven years. *Id.*

**RESPONSE: Paragraph 48 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 48 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

49.     The First IFR states further that "Business that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." *Id.*

**RESPONSE: Paragraph 49 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 49 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

50.     The First IFR does not state that a borrower must be "for profit" in order to be eligible. *See id.*

19

**RESPONSE: Paragraph 50 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 50 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

51.    The First IFR does not state that businesses not organized "for profit" are ineligible. *See id.*

**RESPONSE: Paragraph 51 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 51 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

52.    The First IFR does not mention the Alternative Size Standard codified in Section 3(a)(5)(B) of the SB Act. *See id.*

**RESPONSE: Paragraph 52 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 52 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

53.    The First IFR does not state that the Alternative Size Standard is not applicable to PPP loans, or unavailable to nonprofit organizations applying for PPP loans. *See id.*

**RESPONSE: Paragraph 53 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is**

20

**respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 53 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register. By way of further response, whether the alternative size standard is available to nonprofit organizations given the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is the dispositive *legal question* in this APA lawsuit, and it is specifically denied that the alternative size standard is available to nonprofits.**

54.    On April 15, 2020, SBA published another IFR concerning the affiliation rules applicable to the PPP (the "Affiliation IFR"). *See* 85 FR 20817 (Apr. 15, 2020) ("This interim final rule supplements the [First IFR] with additional guidance regarding the application of certain affiliate rules applicable to SBA's implementation of sections 1102 and 1106 of the [CARES] Act").

**RESPONSE: Paragraph 54 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 54 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

55.    The Affiliation IFR explains that "Prior to the [CARES] Act, nonprofit organizations . . . were not eligible for SBA Business Loan Programs under section 7(a) of the [SB] Act; only for-profit small business concerns were eligible. The [CARES] Act made such nonprofit organizations not only eligible for the PPP, but also subjected them to SBA's affiliation rules." 85 FR at 20819.

21

**RESPONSE**: **Paragraph 55 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 55 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

56.    The Affiliation IFR does not mention the Alternative Size Standard codified in Section 3(a)(5)(B) of the SB Act. *See id.*

**RESPONSE**: **Paragraph 56 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 56 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

57.    The Affiliation IFR does not state that the Alternative Size Standard is not applicable to PPP loans, or unavailable to nonprofit organizations applying for PPP loans. *See id.*

**RESPONSE**: **Paragraph 57 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 57 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.  By way of further response, whether the alternative size standard is available to nonprofit organizations given the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is the dispositive *legal question* in this APA lawsuit, and it is specifically denied that the alternative size standard is available to nonprofits.**

58.     SBA adopted another IFR on May 19, 2020, in which SBA determined that 501(c)(12) tax-exempt electric cooperatives could be eligible for PPP loans and could establish their eligibility under the Alternative Size Standard in Section 3(a)(5)(B). *See* 85 FR 29847, 29848–49 (May 19, 2020) (may be eligible if they "satisfy . . . both tests in SBA's 'alternative size standard'").

**RESPONSE: Paragraph 58 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 58 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.  By way of further response, SBA notes that the above statement omits language explaining that the alternative size standard is available to electric cooperatives only because they were deemed business concerns, i.e., "a business entity organized for profit," Business Loan Program Temporary Changes; Paycheck Protection Program—Eligibility of Certain Electric Cooperatives,85 Fed. Reg. 29,847, 29,848:**

> **Accordingly, for purposes of the PPP, the Administrator, in consultation with the Secretary, has determined that an electric cooperative that is exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code will be considered to be "a business entity organized for profit" for purposes of 13 CFR 121.105(a)(1). As a result, such entities are eligible PPP borrowers, as long as other eligibility requirements are met. To be eligible, an electric cooperative must satisfy the employee-based size standard established in the CARES Act, SBA's employee-based size standard corresponding to its primary industry, if higher, or both tests in \*29849 SBA's "alternative size standard."**

*Id.* **at 29,848-49.**

59.     SBA adopted another IFR on June 11, 2020, in which SBA determined that 501(c)(12) tax-exempt telephone cooperatives could be eligible for PPP loans and could establish

their eligibility under the Alternative Size Standard in Section 3(a)(5)(B). *See* 85 FR 35550, 35552 (June 11, 2020) (may be eligible if they "satisfy . . . both tests in SBA's 'alternative size standard").

**RESPONSE: Paragraph 59 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 59 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.  By way of further response, SBA notes that the above statement omits language explaining that the alternative size standard is available to electric cooperatives only because they were deemed business concerns, i.e., "a business entity organized for profit," Business Loan Program Temporary Changes; Paycheck Protection Program—Eligibility of Certain Telephone Cooperatives,85 Fed. Reg. 35,550, 35,552:**

> **Accordingly, for purposes of the PPP, the Administrator, in consultation with the Secretary, has determined that a telephone cooperative that is exempt from federal income taxation under section 501(c)(12) of the Internal Revenue Code will be considered to be "a business entity organized for profit" for purposes of 13 CFR 121.105(a)(1). As a result, such entities are eligible PPP borrowers, as long as other eligibility requirements are met. To be eligible, a telephone cooperative must satisfy the employee-based size standard established in the CARES Act, SBA's employee-based size standard corresponding to its primary industry, if higher, or both tests in \*29849 SBA's "alternative size standard."**

*Id.*

60.    Each of these IFRs stated that SBA "determined that this treatment [was] appropriate to effectuate the purposes of the CARES Act to provide assistance to eligible PPP borrowers." *See* 85 FR at 29849, 35552.

24

**RESPONSE: Paragraph 60 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 60 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.  By way of further response, SBA notes that the above characterization omits language explaining that the alternative size standard is available to such cooperatives only because they were deemed business concerns, i.e., "a business entity organized for profit" for purposes of the PPP.  *See* Responses to Paragraphs 58 and 59.**

61. At the time these two IFRs were adopted, the CARES Act did not state that 501(c)(12) tax-exempt entities were included within the PPP. *See* CARES Act, § 1102(a)(2)(36).

**RESPONSE: Paragraph 61 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 61 is denied to the extent it is inconsistent with the terms of the cited portion of the federal statute.**

62. At the time these two IFRs were adopted, the CARES Act referred only to 501(c)(3) tax-exempt entities and 501(c)(19) tax-exempt veterans organizations. *See id.*

**RESPONSE: Paragraph 62 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 62 is denied to the extent it is inconsistent with the terms of the cited portion of the federal statute.**

63.     There is no IFR that states that a nonprofit organization, defined in Section 7(a)(36)(A)(iv), cannot establish eligibility under the Alternative Size Standard codified in Section 3(a)(5)(B) of the SB Act. *See* 86 FR 3692 (Jan. 14, 2021) (rule consolidating all prior PPP rules); *see also* 86 FR 15083 (Mar. 22, 2021) (adopting rules to implement ARPA).

**RESPONSE**: **Paragraph 63 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portions of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of their contents. If a response is deemed necessary, Paragraph 63 is denied to the extent it is inconsistent with the terms of the cited portions of the Federal Register.  In particular, the Interim Final Rule published on January 14, 2021, consolidated the interim final rules (and important guidance) issued to that date governing borrower eligibility, lender eligibility, and PPP application and origination requirements for new PPP loans, as well as provides general rules relating to loan increases and loan forgiveness—but it did not consolidate "all" prior IFRs.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, Interim Final Rule, 86 Fed. Reg. 3692, 3693.  By way of further response, whether the alternative size standard is available to nonprofit organizations given the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is the dispositive *legal question* in this APA lawsuit, and it is specifically denied that the alternative size standard is available to nonprofits.**

64.     In January 2021, SBA published a "consolidated" IFR that combined all prior IFRs into a single rule and included additional, new rules to implement the Economic Aid Act (the "Consolidated IFR"). *See* 86 FR 3692 (Jan. 14, 2021).

26

**RESPONSE: Paragraph 64 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 64 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.  In particular, the Interim Final Rule published on January 14, 2021, consolidated the interim final rules (and important guidance) issued to that date governing borrower eligibility, lender eligibility, and PPP application and origination requirements for new PPP loans, as well as provides general rules relating to loan increases and loan forgiveness—but it did not consolidate "all" prior IFRs.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, Interim Final Rule, 86 Fed. Reg. 3692, 3693.**

65.    The Consolidated IFR was "not intended to substantively alter or affect PPP rules that were" unaffected by the Economic Aid Act. 86 FR at 3692.

**RESPONSE: Paragraph 65 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 65 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.**

66.    In the Consolidated IFR, SBA revised the First IFR to add, in a footnote, that "small business concerns" could also use the Alternative Size Standard as codified in Section 3(a)(5)(B) of the SB Act. *Compare* 86 FR at 3695, n.5, *with* 85 FR 20811 at 20812.

**RESPONSE: Paragraph 66 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portions of the Federal Register, to which the Court is**

27

respectfully referred for a complete and accurate statement of their contents. If a response is deemed necessary, Paragraph 66 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.  Paragraph 66 is specifically further denied insofar that it implies that the Consolidated IFR is the first instance where SBA stated that the alternative size standard is available to small business concerns.  *See, e.g.*, Business Loan Program Temporary Changes; Paycheck Protection Program—Eligibility of Certain Electric Cooperatives, Interim Final Rule, 85 Fed. Reg. 29,847-49 & n.1 (May 19, 2020) ("Electric Cooperatives IFR"); Business Loan Program Temporary Changes; Paycheck Protection Program—Eligibility of Certain Telephone Cooperatives, Interim Final Rule, 85 Fed. Reg. 35,550, 35,552 & n.1 (June 11, 2020) ("Telephone Cooperative IFR").

67.     The Consolidated IFR does not state that a nonprofit organization, defined in Section 7(a)(36)(A)(iv), cannot establish eligibility under the Alternative Size Standard. *See generally*, 86 FR 3695.

**RESPONSE: Paragraph 67 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited portion of the Federal Register, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 67 is denied to the extent it is inconsistent with the terms of the cited portion of the Federal Register.  By way of further response, whether the alternative size standard is available to nonprofit organizations given the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is the dispositive *legal question* in this APA lawsuit, and it is specifically denied that the alternative size standard is available to nonprofits.**

28

**The PPP FAQs**

68.    SBA frequently published FAQs to "provide timely additional guidance to address borrower and lender questions concerning the implementation of the [PPP]." SBA FAQ at 1.

**RESPONSE: Paragraph 68 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited SBA FAQs, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 68 is denied to the extent it is inconsistent with the terms of the cited portion of the SBA FAQs.**

69.    SBA stated that "Borrowers and lenders may rely on the guidance provided in this document as SBA's interpretation of the [CARES Act] . . . and of the [PPP] Interim Final Rules" and that SBA would "not challenge lender PPP actions that conform to this guidance," though SBA also warned that the FAQs do "not carry the force and effect of law independent of the statutes and regulations on which it is based." *Id.* at 1 & n.1.

**RESPONSE: Paragraph 69 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited SBA FAQs, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 69 is denied to the extent it is inconsistent with the terms of the cited portion of the SBA FAQs. By way of further response, as quoted more fully, SBA's FAQs state the following: "The U.S. government will not challenge lender PPP actions that conform to this guidance, *and to the PPP Interim Final Rules and any subsequent rulemaking in effect at the time the lender's action is taken*." SBA FAQs at 1 (emphasis added).**

70.    FAQ 2 published April 6, 2020, states:

**Question**: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers for First Draw PPP Loans?

**Answer**: No. Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a 'small business concern' under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards.

Additionally, a business can qualify for a First Draw PPP Loan as a small business concern if it met both tests in SBA's 'alternative size standard' as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

A business that qualifies as a small business concern under section 3 of the Small Business Act, 15 U.S.C. 632, may truthfully attest to its eligibility for a First Draw PPP Loan on the Borrower Application Form, unless otherwise ineligible.

SBA FAQ at 2 (footnote omitted). This FAQ was updated in March 2021 to reflect changes made by subsequent amendments to the PPP and CARES Act. *See id.*

**RESPONSE: Paragraph 70 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited SBA FAQs, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 70 is denied to the extent it is inconsistent with the terms of the cited portion of the SBA FAQs.**

71.    FAQ 3, published April 6, 2020, states:

**Question**: Does my business have to qualify as a small business concern (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) in order to receive a First Draw PPP Loan?

**Answer**: No. In addition to small business concerns, a business is eligible for a First Draw PPP Loan if the business has 500 or fewer employees or the business meets the SBA employee-based or revenue-based size standard for the industry in which it operates (if applicable). Similarly, First Draw PPP Loans are also available for

30

qualifying tax-exempt nonprofit organizations described in section 501(c)(3) of the Internal Revenue Code (IRC), tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concerns described in section 31(b)(2)(C) of the Small Business Act, and eligible nonprofit news organizations that have 500 or fewer employees or meet the SBA employee-based size standards for the industry in which they operate.

SBA FAQ at 2–3 (footnote omitted). This FAQ was updated in March 2021 to reflect changes made by subsequent amendments to the PPP and CARES Act. *See id.*

**RESPONSE: Paragraph 71 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited SBA FAQs, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 71 is denied to the extent it is inconsistent with the terms of the cited portion of the SBA FAQs.**

72. FAQ 34, published April 24, 2020, provides in pertinent part that:

Agricultural producers, farmers, and ranchers are eligible for First Draw PPP loans if: (i) the business has 500 or fewer employees, or (ii) the business fits within the applicable revenue-based sized standard under 13 C.F.R. 121.201.

Additionally, agricultural producers, farmers, and ranchers can qualify for First Draw PPP Loans as a small business concern if their business meets SBA's 'alternative size standard.' The 'alternative size standard' is currently: (1) maximum net worth of the business is not more than $15 million, and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

SBA FAQ at 16. This FAQ was updated in March 2021. *See id.*

**RESPONSE: Paragraph 72 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited SBA FAQs, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 72 is denied to the extent it is inconsistent with the terms of the cited portion of the SBA FAQs.**

31

73.    As of April 24, 2020, the CARES Act did not state that these types of entities could obtain PPP loans. *See* CARES Act, § 1102(a)(2)(36).

**RESPONSE: Paragraph 73 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited federal statute, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 73 is denied to the extent it is inconsistent with the terms of the cited portion of the federal statute.**

74.    FAQ 70, published May 5, 2022, states:

**Question**: Are 501(c)(3) Nonprofit Lenders Eligible for PPP Loan Forgiveness?

**Answer**: Yes, provided that the 501(c)(3) nonprofit lender has complied with all applicable PPP rules, other than 13 CFR 120.110(b) as incorporated into the PPP rules.

Because the CARES Act provided that '[e]xcept as otherwise provided,' the SBA Administrator may guarantee PPP loans 'under the same terms, conditions and processes' as other 7(a) loans, SBA initially interpreted the CARES Act to mean that 13 CFR 120.110 was incorporated into the PPP requirements, except to the extent of any conflict with the statute. 13 CFR 120.110 provides in pertinent part that 'non-profit businesses' and 'financial businesses primarily engaged in the business of lending' are ineligible for SBA business loans. Although the CARES Act specifically authorized nonprofit organizations defined at 15 U.S.C. § 636(a)(36)(A)(vii) to be eligible for PPP loans, it was silent as to financial businesses/lenders. SBA took this as allowing nonprofits to overcome the 13 CFR 120.110 restriction, but not lenders.

A review of SBA's PPP loan records shows that 501(c)(3) nonprofit lenders were confused as to their eligibility for a PPP loan.

SBA has determined that 501(c)(3) nonprofit lender borrowers reasonably relied on the CARES Act's nonprofit authority regarding their eligibility for a PPP loan. In addition, enforcing the Forgiveness and Loan Review IFR (86 FR 8283) that provides for denial of forgiveness to 501(c)(3) nonprofit lenders due to application of the PPP eligibility rule incorporating 13 CFR 120.110(b) will negatively affect the remaining small number of 501(c)(3) nonprofit lenders that have not yet received forgiveness.

Because of reasonable and demonstrated confusion on the part of 501(c)(3) nonprofit lender borrowers, significant borrower hardship, and interference with those borrowers' mission of providing capital to underserved small businesses, the Administrator is exercising her broad discretion under Section 5(b)(7) of the Small Business Act (15 U.S.C. 634(b)(7)) to decline to enforce the Forgiveness and Loan Review IFR rule providing for denial of forgiveness to ineligible borrowers for 501(c)(3) nonprofit lenders. As a result, 501(c)(3) nonprofit lenders are eligible for forgiveness of their PPP loans, provided that the 501(c)(3) nonprofit lender has complied with all applicable PPP rules, other than 13 CFR 120.110(b) as incorporated into the PPP rules.

SBA FAQ at 30–31 (footnote omitted).

**RESPONSE: Paragraph 74 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited SBA FAQs, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 74 is denied to the extent it is inconsistent with the terms of the cited portion of the SBA FAQs.**

75.    FAQ 71, published July 8, 2022, states:

**Question**: Are 501(c)(3) nonprofit organizations with more than 500 employees eligible for PPP Loan Forgiveness?

**Answer**: Section 7(a)(36)(A)(vii) of the Small Business Act (15 U.S.C. 636(a)(36)(A)(vii)) (as added by section 1102(a)(2) of the CARES Act) defines the term 'nonprofit organization' as 'an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt from taxation under section 501(a) of such Code' (501(c)(3) nonprofit organizations). In general, the CARES Act provided that 501(c)(3) nonprofit organizations with a total of 500 or fewer employees were eligible to receive a First Draw PPP Loan. The American Rescue Plan Act (ARPA), enacted on March 11, 2021, increased the size eligibility standard for 501(c)(3) nonprofit organizations for First Draw PPP Loans from a total of 500 or fewer employees to no more than 500 employees *per physical location* of the 501(c)(3) nonprofit organization. On March 22, 2021, SBA published an Interim Final Rule implementing the provisions of ARPA applicable to PPP (86 FR 15083) (ARPA IFR).

On May 31, 2022, the SBA Office of Hearings and Appeals (OHA) issued an Initial Decision in the *Appeal of Lawndale Christian Health Center*, Docket No. PPP-5819168004. In that Initial Decision, the Administrative Law Judge determined that because the applicability date set forth by SBA in the ARPA IFR stated that the

33

ARPA changes to PPP apply to 'loans approved, and loan forgiveness applications submitted, on or after March 11, 2021,' 501(c)(3) nonprofit organizations that received a First Draw PPP Loan before March 11, 2021, but applied for forgiveness on or after March 11, 2021, are entitled to forgiveness of their First Draw PPP Loan if they meet the ARPA increased size eligibility standard.

The Final Rule on Borrower Appeals of Final SBA Loan Review Decisions Under the Paycheck Protection Program published by SBA on September 16, 2021 (86 FR 51589) provides that initial decisions rendered by OHA are not precedential. The Administrator has reviewed the OHA decision issued in the *Appeal of Lawndale Christian Health Center*. Based on the OHA decision and the exercise of her broad discretion under Section 5(b)(7) of the Small Business Act (15 U.S.C. 634(b)(7)), the Administrator has determined that any 501(c)(3) nonprofit organization that received a loan before March 11, 2021, but submits a forgiveness application on or after March 11, 2021, will not be ineligible for forgiveness on the basis that they have more than 500 employees in multiple physical locations. As a result, a 501(c)(3) nonprofit organization that submits a forgiveness application on or after March 11, 2021, is eligible for forgiveness if the 501(c)(3) nonprofit organization meets the ARPA increased size eligibility standard and has otherwise complied with all applicable PPP rules.

SBA FAQ at 31–32 (emphasis in original) (footnote omitted).

**RESPONSE: Paragraph 75 does not constitute a statement of material fact; rather, it is Crouse's characterization of the cited SBA FAQs, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 75 is denied to the extent it is inconsistent with the terms of the cited portion of the SBA FAQs.**

76.     SBA did not publish any FAQ, or other guidance, that states that a nonprofit organization, defined in Section 7(a)(36)(A)(iv), cannot establish eligibility under the Alternative Size Standard. *See generally*, SBA FAQ.

**RESPONSE: Denied.  Nonprofits' inability to qualify in any manner other than as provided under 15 U.S.C. § 636(a)(36)(D)(i)(I)-(II) is evident from the statutory scheme and regulations, as well as various IFRs and guidance issued during the PPP. *See, e.g.*, 15 U.S.C. §§ 632(a), 636(a)(36)(B), (D)(i)(I)-(II); 13 C.F.R. § 121.105(a)(1); *see also* Business Loan**

34

**Program Temporary Changes; Paycheck Protection Program, Interim Final Rule, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020); Business Loan Program Temporary Changes; Paycheck Protection Program, Interim Final Rule, 85 Fed. Reg. 20,818-20 (Apr. 15. 2020); Business Loan Program Temporary Changes; Paycheck Protection Program—Eligibility of Certain Electric Cooperatives, Interim Final Rule, 85 Fed. Reg. 29,847 (May 19, 2020); Business Loan Program Temporary Changes; Paycheck Protection Program—Eligibility of Certain Telephone Cooperatives, Interim Final Rule, 85 Fed. Reg. 35,550 (June 11, 2020); Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, Interim Final Rule, 86 Fed. Reg. 3,692 (Jan. 14, 2021); *see generally* Paycheck Protection Program Loans: FAQs for Borrowers and Lenders, *available at* https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.**

### *Crouse's PPP Loan*

77.     Crouse is a community hospital in Syracuse, New York with over 500 beds and 57 bassinets serving patients seeking medical care that ranges from routine medical services to surgical, critical, and emergency care. (Randall Dec. ¶ 3.)

**RESPONSE:  This statement does not contain a material fact requiring a response.  To the extent that a further response is required, the explicit or implicit assertion in paragraph 77 that a PPP borrower's finances or standing in the community should be considered as a factor for their eligibility for a loan under the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is specifically denied.**

78.     Crouse provides comprehensive women's health services, opioid addiction treatment, and high-risk maternity and neonatal care to 15 counties in Central New York, including delivering over 60% of babies born in Onondaga County alone, while also maintaining a DNV

35

Healthcare and New York State Department of Health certified Comprehensive Stroke Center, as well as one of the highest volume emergency departments with minimal wait times in the Syracuse area. (*Id.*, ¶¶ 3–4.)

**RESPONSE:  This statement does not contain a material fact requiring a response.  To the extent that a further response is required, the explicit or implicit assertion in paragraph 78 that a PPP borrower's finances or standing in the community should be considered as a factor for their eligibility for a loan under the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is specifically denied.**

79.    Prior to the COVID-19 pandemic, Crouse experienced financial difficulties attributable to, among other things, Medicaid reimbursement cuts, increased costs for supplies and drugs, and increased demand from doctors and nurses for higher wages and salaries. (*Id.*, ¶ 5.)

**RESPONSE:  This statement does not contain a material fact requiring a response.  To the extent that a further response is required, the explicit or implicit assertion in paragraph 79 that a PPP borrower's finances or standing in the community should be considered as a factor for their eligibility for a loan under the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is specifically denied.**

80.    Crouse was, and is, especially sensitive to salary and wage pressures, as it competes with many other local hospitals for recruitment and retention of highly skilled medical experts, nurses, and administrators. Prior to, and during, the COVID-19 pandemic, Crouse relied on travel nurses to provide essential patient-care services; these nurses require high compensation to retain them and counteract their ability to choose to work in various locations. (*Id.*, ¶¶ 5–6.)

**RESPONSE:  This statement does not contain a material fact requiring a response.  To the extent that a further response is required, the explicit or implicit assertion in paragraph 80**

**that a PPP borrower's finances or standing in the community should be considered as a**

**factor for their eligibility for a loan under the relevant statutory scheme, regulations, rules,**

**and other guidance promulgated by SBA is specifically denied.**

81.    In the spring and summer of 2020, as the COVID-19 pandemic reached its height, Crouse experienced greater financial difficulties as patients postponed or canceled revenue-driving elective surgeries, Crouse's private medical practice declined as patients chose not to visit their doctors, and Crouse's Emergency Department visits fell precipitously. This contributed to an $18.9 million drop in operating revenue. (*Id.*, ¶¶ 7–8.)

**RESPONSE:  This statement does not contain a material fact requiring a response.  To the**

**extent that a further response is required, the explicit or implicit assertion in paragraph 81**

**that a PPP borrower's finances or standing in the community should be considered as a**

**factor for their eligibility for a loan under the relevant statutory scheme, regulations, rules,**

**and other guidance promulgated by SBA is specifically denied.**

82.    Crouse was compelled, including by state directives, to remain open and treat COVID-19 patients. (*Id.*, ¶ 9.)

**RESPONSE: This statement does not contain a material fact requiring a response.  To the**

**extent that a further response is required, the explicit or implicit assertion in paragraph 82**

**that a PPP borrower's finances or standing in the community should be considered as a**

**factor for their eligibility for a loan under the relevant statutory scheme, regulations, rules,**

**and other guidance promulgated by SBA is specifically denied.**

83.    Crouse remained open while under immense stress and fear that it would not be able to sustain itself financially through the summer; without an injection of additional funds, Crouse prepared to reduce salaries and wages for its doctors and nurses, layoff other workers,

37

shutdown any services unrelated to COVID-19 treatment, and effectively operate with a skeleton crew. Many of Crouse's doctors and nurses were unwilling to continue working and Crouse lost over 100 employees. (*Id.*, ¶¶ 10–11.)

**RESPONSE: This statement does not contain a material fact requiring a response. To the extent that a further response is required, the explicit or implicit assertion in paragraph 83 that a PPP borrower's finances or standing in the community should be considered as a factor for their eligibility for a loan under the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is specifically denied.**

84.     Around this time, Crouse learned about SBA's PPP loans and received some information from its bank, People's United Bank (now M&T Bank) ("People's") in April 2020. (*Id.*, ¶ 12.)

**RESPONSE: This statement does not contain a material fact requiring a response. It further fails to raise a genuine issue of material fact to the extent it is based on inadmissible hearsay. *See* Fed. R. Civ. P. 56(c)(2) (on a motion for summary judgment, parties may rely only on such facts as can "be presented in a form that would be admissible in evidence"); *see also, e.g.*, *Meyer v. State of New York Off. of Mental Health*, 174 F. Supp. 3d 673, 676 n.1 (E.D.N.Y. 2016) (disregarding purported statements of material act that were based on hearsay and collecting cases), *aff'd*, 679 F. App'x 89 (2d Cir. 2017).**

85.     Crouse investigated whether it could, and should, apply for a PPP loan, seeking information from its bank, its outside auditor and accounting firm, and contacts at other hospitals. (*Id.*, ¶ 13.)

**RESPONSE: This statement does not contain a material fact requiring a response. It further fails to raise a genuine issue of material fact to the extent it is based on inadmissible hearsay.** *See* **Fed. R. Civ. P. 56(c)(2);** *see also, e.g.*, ***Meyer*, 174 F. Supp. 3d at 676 n.1.**

86.     In July 2020, Crouse learned that a nonprofit, 501(c)(3) hospital, Erie County Medical Center ("ECMC"), applied for and received a $10 million a Paycheck Protection Program Loan based on the Alternative Size Standard found in 15 U.S.C. § 632(a)(5)(B). (*See id.*, ¶ 14; *see also* Lanciault Dec. Ex. 1 at 2; JA28 ██████████████████████████).)

**RESPONSE: Admit insofar that ECMC received a PPP loan, but deny insofar that the statement concerning what Crouse "learned" is not a material fact requiring a response. The paragraph is further denied insofar that it is based on hearsay, and as a result, fails to raise a genuine issue of material fact.** *See* **Fed. R. Civ. P. 56(c)(2);** *see also, e.g.*, ***Meyer*, 174 F. Supp. 3d at 676 n.1.**

87.     Crouse consulted People's and completed a Borrower Application Form for a Paycheck Protection Program Loan, SBA Form 2483 (the "PPP Loan Application"), on August 6, 2020. (*See* Randall Dec. ¶ 15; AR3614–15)

**RESPONSE: Admit insofar that Crouse executed an SBA Form 2483 on August 6, 2020. The remainder of Paragraph 87 does not contain any material facts requiring a response.**

88.     Crouse identified itself as a "501(c)(3) nonprofit" within its PPP Loan Application. (*See* AR3614.)

**RESPONSE: Admit.**

89.     Crouse disclosed in its PPP Loan Application that it had more than 2,000 employees at the time of its application. (*See id.*)

**RESPONSE: Admit.**

90.     Crouse's tangible net worth as of March 27, 2020 [was] ████████████ and its average net income, over the two prior years, [was] ██████ . (*See* AR503; *see also* Randall Dec. ¶ 16.)

**RESPONSE: Admit, as modified above due to presumable typographic errors.**

91.     Crouse met the monetary criteria for the Alternative Size Standard found in 15 U.S.C. §§ 632(a)(5)(B)(i) and (ii) (i.e., section 3(a)(5)(B)). (*See* AR503; Randall Dec. ¶ 16.)

**RESPONSE:   Paragraph 91 does not constitute a statement of material fact; rather, it contains Crouse's legal conclusion regarding its ability to qualify for PPP loan forgiveness under the Alternative Size Standard.  To the extent a further response is required, it is denied insofar that the Alternative Size Standard is not available to nonprofit organizations. The paragraph is admitted insofar that Crouse submitted documentation during administrative proceedings to substantiate its ability to satisfy the monetary criteria for the Alternative Size Standard, but otherwise denied because SBA did not proceed with analysis needed to confirm that.  *See generally* SBA000001-4011.**

92.     People's approved and disbursed a $10,000,000 PPP loan to Crouse on August 7, 2020. (*See* AR3621; AR508.)

**RESPONSE: Admit.**

93.     Crouse used the loan proceeds exclusively to pay employees' salaries and employment benefits. (*See* Randall Dec. ¶¶ 17–18; *see also* AR3621; AR547–554 (Crouse Quarterly Tax Returns); AR1510 & AR2425 (gross wages paid in September 2020).)

**RESPONSE: Admit insofar that Crouse submitted documentation during administrative proceedings to substantiate its use of proceeds, but otherwise deny because SBA did not proceed with the analysis needed to confirm that the PPP funds were used properly, as such**

**analysis was unnecessary because Crouse had been deemed ineligible because it exceeded the size standards for a nonprofit organization set forth in 15 U.S.C. § 636(a)(36)(D)(i). *See generally* SBA000001-4011.**

94. Because of the PPP loan, Crouse was able to continue paying salaries and wages, reducing the uncertainty and concern at the hospital and allowing Crouse to retain key employees for several additional weeks. (Randall Dec. ¶¶ 18–19.)

**RESPONSE: This statement does not contain a material fact requiring a response.**

95. Crouse expected, and planned on, the PPP loan being forgiven. (*Id.*, ¶ 21.)

**RESPONSE: This statement does not contain a material fact requiring a response. To the extent that a further response is required, the explicit or implicit assertion in paragraph 95 that a PPP borrower's "expectations" or "plans" should be considered as a factor for their eligibility for loan forgiveness under the relevant statutory scheme, regulations, rules, and other guidance promulgated by SBA is specifically denied.**

### *Crouse Applies for, and is Denied, Loan Forgiveness*

96. People's submitted Crouse's PPP Loan Forgiveness Application, SBA Form 3508, to the Defendant United States Small Business Administration ("SBA") on November 23, 2021. (*See* AR3621–25.)

**RESPONSE: Admit, but note that Crouse, through its Chief Financial Officer, completed the PPP Loan Forgiveness Application. *See* SBA003261-25.**

97. SBA states that it lacked sufficient resources and so implemented a two-step forgiveness review process that involved automated screening of all loans, followed by a manual review of certain loans. (*See* Declaration of Martin Andrews (ECF No. 28-1) ¶¶ 9–11 (hereafter, "Andrews Dec.").)

**RESPONSE:** **Admit.**

98.    SBA manually reviewed any loans marked in automated review with "hold" flags, which concerned unusual attributes such as eligibility or affiliate issues, or potential fraud, abuse, or other improprieties. (*See id.*)

**RESPONSE:** **Admit.**

99.    SBA's manual review also included a random sample of all other loans and any loans for which SBA had received a credible law enforcement tip. (*See id.*, ¶ 11.)

**RESPONSE:** **Admit.**

100.    SBA's manual review considered the borrower's PPP loan application and forgiveness application, together with any additional documentation (e.g., tax records, financial statements) that SBA requested. (*See id.*)

**RESPONSE:** **Admit.**

101.    If hold flags in a PPP Loan Forgiveness Application could not be cleared, then the SBA would deny forgiveness. (*See id.*)

**RESPONSE:** **Admit.**

102.    Crouse's PPP Loan Forgiveness Application was flagged and routed into manual review. (*See AR3597, AR3599.*)

**RESPONSE:** **Admit.**

103.    SBA notified People's by letter dated November 26, 2021 and requested supporting information including, inter alia, payroll and full-time employee information. (*See AR3597.*)

**RESPONSE:** **Admit.**

104.    This information requested by SBA's November 26, 2021 letter was provided. (*See AR508–3296.*)

**RESPONSE: Admit.**

105.    In March 2022, SBA requested from People's that Crouse submit "a breakdown of each location the Borrower has and the number of employees at each location." (*See* AR3599–3600.)

**RESPONSE: Admit.**

106.    After receiving that information (*See* AR2950), SBA requested, and Crouse provided, "full, filed 2019 Tax Return or IRS Form 990." (*See* AR3603; *see also* AR2426–2948.)

**RESPONSE: Admit.**

107.    In May 2022, SBA requested that Crouse fill out SBA Form 3511, an "Affiliation Worksheet." (*See* AR 3605 (letter requesting that Crouse complete an Affiliation Worksheet).)

**RESPONSE: Admit.**

108.    SBA Form 3511 contains a footnote which states, without any citation, "[t]he alternative size standard is available only to for-profit borrowers, not non-profit organizations." (*See* AR503, n.3).

**RESPONSE: Admit insofar that footnote three contains the quoted language, but deny that the footnote contains no citations.  Deny any explicit or implicit assertion in paragraph 108 that there is no support for the proposition that nonprofit borrowers cannot qualify under the alternative size standard.**

109.    SBA Form 3511 was created in December 2020, after Crouse had applied for, received, and used its PPP loan in August and September 2020. *See* U.S. Office of Mgmt. & Bud., Emergency Justification for PPP Affiliation Worksheet, OMB 3245-0416, ICR 202012-3245-001 (Dec. 7, 2020), *available at* https://omb.report/icr/202012-3245-001 (approved Dec. 14, 2020).

**RESPONSE: Admit insofar that SBA Form 3511 was created in December 2020, but deny the remainder of the paragraph, as the cited source does not support the remainder of the assertions set forth in Paragraph 109.**

110.    SBA's Form 3511 was not adopted through any formal rulemaking, as SBA discloses to the Office of Management and Budget when it sought approval for the form. *See id.*

**RESPONSE: Admit, but deny insofar that Paragraph 110 contains any implication that SBA's issuance and use of SBA Form 3511 was improper.   SBA followed emergency processes permitted under the Paperwork Reduction Act to issue and use SBA Form 3511. *See* 5 U.S.C. § 3507(j); 5 C.F.R. § 1320.13.   Further, SBA Form 3511 and its use were approved by the Office of Management and Budget (OMB).**

111.    Crouse provided, and SBA received, the completed Affiliation Worksheet on June 7, 2022. (*See* AR501.)

**RESPONSE: Admit.**

112.    Within the Affiliation Worksheet, Crouse demonstrated its calculation of its tangible net worth and average net income for the prior two years, as of March 27, 2020 and asserted its eligibility based on the Alternative Size Standard and SBA FAQ 2. (*See* AR 501–507; *see also* AR3595–96 (June 7, 2022 letter from Crouse to SBA).)

**RESPONSE: Admit insofar that Crouse selected Box C on its Form 3511 to indicate that it wanted to rely on the Alternative Size Standard, and insofar that it cited to SBA FAQ #2, but deny Paragraph 112 insofar that it contains any implication that either the Alternative Size Standard or SBA FAQ #2 provided a legitimate basis for Crouse to be eligible for PPP loan forgiveness.**

44

113.    Crouse identified affiliates and stated that none of them received PPP loans. (*See* AR3312–13.)

**RESPONSE: Admit.**

114.    On July 25, 2022, SBA notified People's that it was considering a full denial of forgiveness because Crouse had more than 500 employees, which Crouse had disclosed at the time it was approved for the PPP loan. (AR3610 (July 25, 2022 letter from SBA); *see also* AR3614 (PPP Loan Application).)

**RESPONSE: Admit.**

115.    SBA's letter cited SBA's April 2, 2020 Interim Final Rule (the "First IFR") in support of its tentative decision to deny Crouse's forgiveness application on the grounds that Crouse was ineligible for a PPP loan because it had more than 500 employees. (*See* AR3611–12).

**RESPONSE: Admit.**

116.    SBA's July 25, 2022 letter acknowledged that Crouse applied for its loan after SBA FAQ 2 was published. (*See id.*)

**RESPONSE: Admit.**

117.    SBA's July 25, 2022 letter states that SBA FAQ 2 "does not carry the force and effect of law independent of the statute and regulations on which it is based." (*Id.* at AR3612.)

**RESPONSE: Admit.**

118.    The July 25, 2022 letter does not state that only a "business concern" may rely on the Alternative Size Standard, nor does it cite 13 C.F.R. § 121.105(a). (*See id.* at AR3611–13.)

**RESPONSE: Admit.  Deny any explicit or implicit assertion in paragraph 118 that there is no support for the proposition that nonprofit borrowers cannot qualify under the alternative size standard.**

45

119.    Crouse sent a response letter, which SBA received on August 4, 2022, explaining that it qualified under the Alternative Size Standard and referring (again) to FAQ 2. (*See* AR3276.)

**RESPONSE: Admit insofar that Crouse asserted that position in its letter, but deny that Crouse in fact qualified under the alternative size standard.**

120.    Crouse pointed out in its response letter that the Alternative Size Standard was made available to other types of businesses in SBA's IFRs and never stated to be inapplicable to nonprofit organizations. (*See id.*)

**RESPONSE: Deny that Crouse's letter at SBA003276 contains the above assertions.**

121.    On October 6, 2022, SBA notified People's that Crouse's forgiveness application was denied. (*See* AR498.)

**RESPONSE: Admit.**

122.    SBA's October 6, 2022 letter states that Crouse was ineligible for the PPP loan because Crouse "exceeds the maximum allowable number of employees and the SBA small business size standards" and further that "a Non-Profit is ineligible for the Alternative Size standard." (*See* AR498–99.) The letter does not cite to 13 C.F.R. § 121.105(a). (*See id.*)

**RESPONSE: Admit insofar that the October 6, 2022 letter contains the quoted language. Deny any explicit or implicit assertion in paragraph 122 that there is no support for the proposition that nonprofit borrowers cannot qualify under the alternative size standard based on a lack of citation to 13 C.F.R. § 121.105(a).**

### *Crouse Appeals SBA's Forgiveness Denial Decision*

123.    Crouse timely appealed to Office of Hearings and Appeals ("OHA") by filing a petition for review on November 7, 2022. (*See* AR1.)

**RESPONSE: Admit.**

124.    SBA filed an opposition to Crouse's appeal on January 3, 2023. (*See* AR3951–54.)

**RESPONSE: Admit, but add that SBA's response to the appeal filed by Crouse appears, in full, on SBA003946-60.**

125.    Crouse attached as exhibits to its appeal petition IRS Form 990s for four nonprofit hospitals: Eastern Niagara Hospital ("ENH"); Brooks-TLC Hospital System, Inc. ("Brooks"); Carthage Area Hospital ("Carthage"); and Memorial Hospital of Willian F and Gertrud F Jones ("Memorial"). Crouse also attached ECMC's 2020 Annual Report. (*See* AR7-9, AR29-471.)

**RESPONSE: Admit, but note that Memorial is "Memorial Hospital of William F and Gertrude F Jones Inc."  SBA000401.**

126.    Each of these exhibits indicated that each borrower had more than 500 employees. (*See* AR50; AR200; AR280; AR353; AR401.)

**RESPONSE: Admit, but deny any explicit or implicit assertion in Paragraph 126 that the respective lenders for the five purportedly comparable nonprofit hospitals (Memorial, Brooks, ENH, ECMC, and Carthage) entered information into the SBA's electronic transmission system indicating that these nonprofits had more than 500 employees at the loan origination stage.  *See* Dkt. 28-1 ¶ 13.**

127.    ECMC (*See* JA130), Brooks (*See* JA13), Memorial (*See* JA138), Carthage (*See* JA38, JA69), and ENH (*See* JA85) were each identified as NAICS Code 622110 (General Medical and Surgical Hospitals) in the SBA's internal notes and records.

**RESPONSE: Admit.**

128.    NAICS Code 622110 (General Medical and Surgical Hospitals) is the industry code applicable to Crouse. (AR3621.)

**RESPONSE: Admit.**

129.   In opposition to Crouse's appeal, SBA asserted that Section 7(a)(36)(D)(i) "provides only two options for nonprofit organizations to meet the size eligibility standard" for a PPP loan. (AR3955.)

**RESPONSE: Admit that SBA's response to Crouse's appeal contains the quoted language.**

130.   SBA also argued that Crouse could not use the Alternative Size Standard because it was not a "business concern" as defined in 13 C.F.R. § 121.105(a)(1). (AR3955.)

**RESPONSE: Admit.**

131.   SBA asserted that Crouse's argument about similarly situated nonprofit borrowers was "speculative at best" and Crouse "failed to provide any evidence of the circumstances surrounding the alleged forgiveness" of those borrowers, including "whether SBA even reviewed the loan forgiveness applications" for those borrowers. (AR3958.)

**RESPONSE: Admit that SBA's response to Crouse's appeal contains the quoted language.**

132.   SBA further asserted that Crouse has no "knowledge of [the other borrowers'] internal documentation and status at the time they applied for a PPP loan or if they [were] eligible under another standard." (AR3959.)

**RESPONSE: Admit that SBA's response to Crouse's appeal contains the quoted language.**

133.   SBA did not cite to or submit any evidence (i) concerning the five nonprofit borrowers in support of its claim that it had not "even reviewed the loan forgiveness applications" for those borrowers or (ii) concerning their "status at the time they applied for a PPP loan." (*See id.*)

**RESPONSE: Admit insofar that SBA's response to Crouse's appeal contains the quoted language, but deny any explicit or implicit assertion that SBA's argument was illegitimate because it did not cite to or submit the evidence as described in Paragraph 133.**

48

134.    OHA denied Crouse's appeal of its loan forgiveness denial. (*See* AR3961–74.)

**RESPONSE: Admit.**

135.    OHA's denial decision states that Crouse "is not a small business concern eligible for the Alternative Standard as it is not a business operating for profit." (AR3973.)

**RESPONSE: Admit.**

136.    OHA's denial decision asserts that Crouse's "argument that other 'similarly situated' entities have received loan forgiveness is not supported by any evidence in the record." (AR3974.)

**RESPONSE: Admit.**

137.    OHA's denial decision asserts that "decisions regarding appeals of other PPP loans are not biding in this matter, as they have no precedential value." (AR3974.)

**RESPONSE: Admit.**

138.    Crouse filed a petition for reconsideration on January 18, 2023. (*See* AR3975–89.)

**RESPONSE: Admit.**

139.    Crouse attached to its petition for reconsideration a copy of SBA's published PPP loan data table, an excel spreadsheet, that was filtered to show "at least 365 nonprofits with over 500 employees" that "received SBA loan forgiveness." (AR3986; AR3990.)

**RESPONSE: Admit insofar that Crouse's petition for reconsideration contained the quoted language and insofar that Crouse attached to that petition an Excel spreadsheet containing PPP loan data.**

140.    On February 16, 2023, OHA denied Crouse's petition for reconsideration. (*See* AR 3992–4011.)

**RESPONSE: Admit.**

49

141.    OHA's reconsideration denial decision states that Crouse "is not a small business concern eligible for the Alternative Standard, as it is not a business operating for profit." (AR4009–10.)

**RESPONSE: Admit.**

142.    OHA's reconsideration denial decision asserts that Crouse's "argument that other 'similarly situated' entities have received loan forgiveness is not supported by evidence in the record other than [Crouse's] assertions." (AR4010.)

**RESPONSE: Admit.**

143.    OHA's reconsideration denial decision asserts that "decisions regarding appeals of other PPP loans are not binding in this matter, as they have no precedential value." (AR4010.)

**RESPONSE: Admit.**

144.    Crouse was shocked that SBA denied Crouse's forgiveness application. (Randall Dec. ¶ 20.)

**RESPONSE:  This fact is not material.  To the extent a response is required, admit insofar that the supplied declaration of Kevin Randall supports this assertion.**

145.    Because Crouse anticipated that the PPP loan would be forgiven, ████████████ ███████████████████████████████████████████████████████████. (*See id.*, ¶¶ 21–24.)

**RESPONSE:  This statement does not contain a material fact requiring a response.  To the extent a response is required, it is denied insofar that a PPP loan has an extremely low interest rate of 1%, well below commercial market rates, and favorable repayment periods that can be as long as 10 years.  *See* 85 Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg 20,811, 20,813 (Apr. 15, 2020) (providing one**

50

**percent interest rate on PPP loans); Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3692, 3703 (Jan. 14, 2021) (same);** *see also* **13 C.F.R. § 120.531 ("SBA may agree to extend the maturity of a loan for up to 10 years beyond its original maturity if the extension will aid in the orderly repayment of the loan.").**

146.    In particular, with the added debt service for the PPP loan, ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████. (*Id.*, ¶ 23.)

**RESPONSE:  This statement does not contain a material fact requiring a response.  To the extent a response is required, it is denied consistent with the response to Paragraph 145.**

*Crouse Commences this Action*

147.    Crouse commenced this action (the "Action") under the Administrative Procedure Act ("APA") by filing its Complaint May 19, 2023. (*See* ECF No. 1.)

**RESPONSE: Admit.**

148.    SBA filed its Answer on August 31, 2023. (ECF No. 18.)

**RESPONSE: Admit.**

149.    SBA filed the administrative record on September 1, 2023. (*See* ECF No. 20.)

**RESPONSE: Admit.**

*The Court Directs SBA to Produce Additional Documents to Supplement the Record*

150.    Crouse filed two discovery motions, an initial motion to supplement the record and a letter motion to compel production. (*See* ECF Nos. 27, 49.)

**RESPONSE: Admit.**

51

**Crouse's First Discovery Motion**

151.    Crouse filed its first motion for discovery on November 2, 2023, in which it sought information concerning the SBA's forgiveness decision with respect to the five nonprofit hospitals described in Crouse's OHA appeal: ECMC, ENH, Brooks, Carthage, and Memorial. (*See* ECF No. 27; *see also* ECF No. 27-1 at 14–15.)

**RESPONSE: Admit.**

152.    Crouse argued that SBA had withheld from the record information concerning the status of the five nonprofit borrowers which information SBA must have relied on to rebut Crouse's arguments in the OHA appeal. (*See* ECF No. 27-1 at 18–20.)

**RESPONSE: Paragraph 152 does not constitute a statement of material fact; rather, it is Crouse's characterization of legal arguments set forth in its motion for discovery, to which the Court is respectfully referred for a complete and accurate statement of its contents. *See* Dkt. 27. If a response is deemed necessary, Paragraph 152 is denied to the extent it is inconsistent with the motion.**

153.    Crouse also argued that SBA's denial decision was inconsistent with SBA's published loan data concerning nonprofit organizations and that SBA appeared to be withholding from the record information about the five nonprofit borrowers that would contradict SBA's position. (*See id.*)

**RESPONSE: Paragraph 153 does not constitute a statement of material fact; rather, it is Crouse's characterization of legal arguments set forth in its motion for discovery, to which the Court is respectfully referred for a complete and accurate statement of its contents. *See* Dkt. 27. If a response is deemed necessary, Paragraph 153 is denied to the extent it is inconsistent with the motion.**

154.    Crouse asserted that these constituted "unusual circumstances" and evidenced bad faith. (*Id.*)

**RESPONSE: Paragraph 154 does not constitute a statement of material fact; rather, it is Crouse's characterization of legal arguments set forth in its motion for discovery, to which the Court is respectfully referred for a complete and accurate statement of its contents.  *See* Dkt. 27. If a response is deemed necessary, Paragraph 154 is denied to the extent it is inconsistent with the motion.**

155.    Crouse attached to its motion a declaration containing a true and correct copy of an email from ECMC's Chief Financial Officer to Crouse's Director of Finance, dated July 29, 2022, in which ECMC's Chief Financial Officer stated that ECMC "applied for and received forgiveness and had received the [PPP] loan under the alternative size method." (*See* ECF No. 27-2, Ex. 1 at 2.)

**RESPONSE: Paragraph 155 does not constitute a statement of material fact; rather, it is Crouse's characterization of its motion for discovery, to which the Court is respectfully referred for a complete and accurate statement of its contents.  *See* Dkt. 27; Dkt. 27-2. If a response is deemed necessary, Paragraph 155 is denied to the extent it is inconsistent with the motion.**

156.    SBA opposed Crouse's motion for discovery. (*See* ECF No. 28.)

**RESPONSE: Admit.**

157.    SBA argued that the information Crouse sought was not relevant because "Crouse's loan was manually reviewed and had a hold code," while "[n]o other purported comparator was similarly situated in that regard." (ECF No. 28 at 18.)

**RESPONSE: Paragraph 157 does not constitute a statement of material fact; rather, it is Crouse's characterization of SBA's arguments in opposition to Crouse's motion for discovery, to which the Court is respectfully referred for a complete and accurate statement of its contents.  *See* Dkt. 28. If a response is deemed necessary, Paragraph 157 is denied to the extent it is inconsistent with SBA's opposition.**

158.    SBA attached the Declaration of Martin Andrews to its opposition. (*See* ECF No. 28-1 (the "Andrews Dec.").)

**RESPONSE: Admit.**

159.    Mr. Andrews testified that ECMC, Brooks, ENH, and Carthage were subject to manual review of their PPP loan forgiveness applications. (Andrews Dec. ¶¶ 16–18, 20.)

**RESPONSE: Paragraph 159 does not constitute a statement of material fact; rather, it is Crouse's characterization of the declaration of Martin Andrews, to which the Court is respectfully referred for a complete and accurate statement of its contents.  *See* Dkt. 28-1. If a response is deemed necessary, Paragraph 159 is denied to the extent it is inconsistent with that declaration.**

160.    Mr. Andrews testified that it was "incorrect" that ECMC received loan forgiveness based on the Alternative Size Standard, as stated by ECMC's Chief Financial Officer. (*Id.*, ¶ 19; *see* ECF No. 27-2, Ex. 1 at 2.)

**RESPONSE: Paragraph 160 does not constitute a statement of material fact; rather, it is Crouse's characterization of the declaration of Martin Andrews, to which the Court is respectfully referred for a complete and accurate statement of its contents.  *See* Dkt. 28-1. If a response is deemed necessary, Paragraph 160 is denied to the extent it is inconsistent with that declaration, which further explains Mr. Andrews' meaning that "[n]on-profit entities**

**such as Plaintiff and Erie County Medical Center cannot qualify for a PPP loan using SBA's alternative size standard," Dkt. 28-1 ¶ 19, which is true even if the individual responsible for reviewing ECMC's loan erroneously indicated otherwise in that borrower's internal notes, *see* Declaration of Martin Andrews ¶ 50, submitted with Defendants' cross-motion for summary judgment and response in opposition to Crouse's motion for summary judgment.**

161.    At oral argument on December 20, 2023, the Court concluded that "Crouse has set forth a prima facie case that the SBA has excluded from the administrative record documents that are inconsistent with its decision that no hospital, no nonprofit hospital could rely on the net worth/net income alternative size standard." (Dec. 20, 2023 Hrg. Tr. (ECF No. 31) at 49:16-20.)

**RESPONSE: Paragraph 161 does not constitute a statement of material fact; rather, it is Crouse's characterization of the transcript of proceedings before Magistrate Judge Baxter on December 20, 2023, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 161 is denied to the extent it is inconsistent with that transcript.**

162.    The Court also concluded that, because SBA "offer[ed] selective evidence trying to establish that the other nonprofits, including hospitals identified by Crouse, were not really 'comparable,' without providing Crouse or the court with documentation of whether SBA actually approved loan forgiveness for other nonprofits . . . based on the [Alternative Size Standard] . . . [that] helps to demonstrate the SBA's bad faith in trying to avoid disclosure of evidence that might contradict the position it has taken." (*Id.* at 49:21–50:9.)

**RESPONSE: Paragraph 162 does not constitute a statement of material fact; rather, it is Crouse's characterization of the transcript of proceedings before Magistrate Judge Baxter on December 20, 2023, to which the Court is respectfully referred for a complete and**

**accurate statement of its contents. If a response is deemed necessary, Paragraph 162 is denied to the extent it is inconsistent with that transcript.**

163.    The Court ordered SBA to provide discovery to supplement the record concerning (i) the five hospitals identified by Crouse in the OHA appeal; (ii) documents relied on by SBA to oppose Crouse's discovery motion; and (iii) documents concerning other nonprofit organizations that underwent SBA's manual forgiveness review and received loan forgiveness, as referenced in a September 26, 2022 Report of the SBA Inspector General (Report No. 22-21) (hereafter the "OIG Report"). (*See* Text Minute Entry (Dec. 21, 2023).)

**RESPONSE**: **Paragraph 163 does not constitute a statement of material fact; rather, it is Crouse's characterization of the Text Minute Entry entered on the Court's docket on December 21, 2023, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 163 is denied to the extent it is inconsistent with that Text Minute Entry.**

164.    SBA initially produced documents in February 2024. (*See* Lanciault Dec., Ex. 2.)

**RESPONSE: Admit, but deny that this is a material fact.**

165.    SBA produced internal records of a "Higher Authority Review" concerning each of ECMC, ENH, Brooks, Carthage, and Memorial, which SBA conducted in October 2023 "in connection with the preparation of the declaration of Martin F. Andrews" submitted in this litigation. (*Id.* at 1.)

**RESPONSE: Paragraph 165 does not constitute a statement of material fact; rather, it is Crouse's characterization of the discovery produced in this matter, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 163 is denied to the extent it is inconsistent with that discovery.**

56

166.    SBA stated that, of the borrowers referenced in the OIG Report, "[o]nly two" were "subject to manual review and had no employee-based size standard applicable to them." (*Id.* at 2.)

**RESPONSE: Paragraph 166 does not constitute a statement of material fact; rather, it is Crouse's characterization of correspondence exchanged during discovery in this matter, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 166 is denied to the extent it is inconsistent with that correspondence.**

167.    These two borrowers were ██████████████████████████████████ ██████████████████████████████████████████████████ (*See id.*; *see also* JA206, JA219.)

**RESPONSE: Admit, but deny that this is a material fact.**

### Crouse's Second Discovery Motion

168.    Crouse requested, and SBA refused to produce, documents concerning any other nonprofit borrowers referenced in the OIG Report that (i) were subject to manual forgiveness review and (ii) had more than 500 employees and did not meet any other industry-specific size standard. (*See* ECF No. 49.)

**RESPONSE: Admit, but deny that this is a material fact.**

169.    SBA asserted that those borrowers (referred to as the "OIG Borrowers), ████ ████████████████████████████████████████████████████ ██████████████████████████████████████. (*See* ECF No. 52 at 3.)

**RESPONSE: Admit, but deny that this is a material fact.**

170.    These OIG Borrowers had all received loan forgiveness, after manual review, in 2021. (*See* AR3990 Cells BA14, BA155, BA215, BA308, BA309, BA332.)

**RESPONSE: Admit insofar that those OIG Borrowers had all received loan forgiveness in 2021, but deny that the citation provided supports the proposition that those OIG Borrowers underwent manual review, and further deny that this is a material fact.**

171.    Crouse moved to compel production of the documents concerning the initial approval of the OIG Borrowers' forgiveness applications ██████████████████████ ████████████████████████████████ (*See* ECF No. 49.)

**RESPONSE: Admit that Crouse made such motion during litigation, but deny that this is a material fact.**

172.    SBA opposed Crouse's motion to compel production of documents. (*See* ECF No. 52 at 3–4.)

**RESPONSE: Admit that SBA opposed Crouse's motion to compel during litigation, but deny that this is a material fact.**

173.    At oral argument on June 10, 2024, the Court concluded that "SBA's continuing efforts to resist disclosure of documents that are contrary to its litigation position, in that they may reflect reliance on the [Alternative Size Standard], are in my view reflective of bad faith." (June 10, 2024 Hrg. Tr. (ECF No. 56) at 11:3-8.)

**RESPONSE: Paragraph 173 does not constitute a statement of material fact; rather, it is Crouse's characterization of the transcript of proceedings before Magistrate Judge Baxter on June 10, 2024, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 173 is denied to the extent it is inconsistent with that transcript.**

174. The Court ordered SBA to produce documentation concerning SBA's initial decision to approve forgiveness for the OIG Borrowers. (*See id.*; *see also* ECF No. 54.)

**RESPONSE: Admit insofar that Magistrate Judge Baxter granted Crouse's letter motion to compel "records relating to the original Paycheck Protection Program loan forgiveness applications submitted to the Small Business Administration by eleven identified non-profit borrowers." Dkt. 54.**

175. The Court also stated that all materials produced in discovery "should be available for [the Court's] consideration" at summary judgment. (*See* June 10, 2024 Hrg. Tr. at 16:3-8; *see also* ECF No. 54.)

**RESPONSE: Paragraph 175 does not constitute a statement of material fact; rather, it is Crouse's characterization of the transcript of proceedings before Magistrate Judge Baxter on June 10, 2024, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 175 is denied to the extent it is inconsistent with that transcript.**

176. By joint letter dated August 1, 2024, the parties informed the Court that they had agreed to file a joint appendix containing the materials SBA produced pursuant to the Court's order directing discovery to supplement the administrative record. (*See* ECF No. 60.)

**RESPONSE: Admit, but deny that this is a material fact.**

177. On August 16, 2024, the Joint Appendix was submitted to the Court, under seal. (*See* ECF No. 62-2.)

**RESPONSE: Admit, but deny that this is a material fact.**

59

*The Similarly Situated Nonprofit Borrowers*

178.    According to the internal records of the SBA, the nonprofit borrowers for which Crouse obtained discovery received loan forgiveness ████████████████████████████ ████████████████████████████████████████████████████████████████. (*See* JA129, JA218, JA250, JA359, JA239, JA299, JA307, JA265, JA283, JA320–23.)

**RESPONSE: Admit, but deny that this is a material fact.**

### The Nonprofit Hospitals Identified by Crouse

179.    The SBA records concerning ECMC ████████████████████████████████ ████████████████████████████████████████████████. (JA109, JA114.) These records include ECMC's loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in reviewing ECMC's forgiveness application. (*See* Andrews Dec., ¶ 18 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

180.    ECMC is a 501(c)(3) nonprofit hospital, NAICS Code 622110, that received a $10,000,000 PPP loan. (JA109, JA114.)

**RESPONSE: Admit, but deny that this is a material fact.**

181.    ECMC's entire loan was forgiven on July 23, 2021. (*See* AR7–8; AR3990, Cell BA223.)

**RESPONSE: Admit, but deny that this is a material fact.**

182.    ECMC's forgiveness application was subject to SBA's manual review. (Andrews Dec., ¶ 18 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

183.    SBA produced a true and correct copy of its internal records concerning the review of ECMC's forgiveness application. (*See* JA129.)

**RESPONSE: Admit, but deny that this is a material fact.**

184.    SBA's records ████████████████████████████████████

█████████████████████████ (JA129.)

**RESPONSE: Admit, but deny that this is a material fact.**

185.    SBA's records █████████████████████████████████████

████████████████████████████████████████████████████████

██████████████.)

**RESPONSE: Admit, but deny that this is a material fact.**

186.    SBA's records █████████████████████████████████████

████████████████████████████(JA129.)

**RESPONSE: Admit, but deny that this is a material fact.**

187.    The SBA records concerning ENH ██████████████████████

██████████████████████████████████. (JA77, JA81.) These records include ENH's loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in reviewing ENH's forgiveness application. (*See* Andrews Dec., ¶ 17 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

188.    Crouse provided SBA with ENH's tax records which showed ENH had 790 employees. (AR200.)

**RESPONSE: Admit, but deny that this is a material fact.**

189.     ENH is a 501(c)(3) nonprofit hospital, NAICS Code 622110, that received a $5,853,436 PPP loan. (JA77, JA81.)

**RESPONSE: Admit, but deny that this is a material fact.**

190.     ENH's entire loan was forgiven on August 2, 2021. (AR8.)

**RESPONSE: Admit, but deny that this is a material fact.**

191.     At the time ENH applied for its PPP loan, June 24, 2020, ENH was a debtor under Chapter 11 of the United States Bankruptcy Code, in Case No. 19-12342-CLB, in the United States Bankruptcy Court for the Western District of New York. (*See* AR8; JA77.)

**RESPONSE: Denied, both as a factual matter and as to materiality. ENH certified on its borrower application form that ███████████████████████████████████████. Further, the publicly available docket in ENH's Chapter 11 bankruptcy case reflects that an order granting ENH's motion to dismiss its own Chapter 11 case, and dismissing the Chapter 11 case and related adversary proceeding against the SBA, was entered on that same date: June 24, 2020.  *See In re Eastern Niagara Hospital*, W.D.N.Y. Bankruptcy Case No. 19-12342-CLB, Dkt. 504 (W.D.N.Y. Bankr. June 24, 2020). ENH's stated purpose of its motion to dismiss its Chapter 11 case was "so that a PPP loan application can be filed without the 'bankruptcy disqualification' being implicated" before the PPP program expired on June 30, 2020. *Id.*, Dkt. 487 ¶¶ 13, 18.**

192.     ENH's forgiveness application was subject to SBA's manual review. (Andrews Dec., ¶ 17 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

193.     SBA produced a true and correct copy of its internal records concerning the review of ENH's forgiveness application. (*See* JA86.)

**RESPONSE: Admit, but deny that this is a material fact.**

194.   SBA's records ███████████████████████████████████

████████████████████████████████████████████████████

██████████ (JA87.)

**RESPONSE: Admit, but deny that this is a material fact.**

195.   SBA's October 2023 "Higher Authority Review" ████████████████

████████████████████████████████████████████████████

██████████ (JA94.)

**RESPONSE: Admit, but deny that this is a material fact.**

196.   The SBA records concerning Brooks ███████████████████████████

████████████████████████████████████████. (JA2, JA4.)

These records include Brooks' loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in reviewing Brooks' forgiveness application. (*See* Andrews Dec., ¶ 16 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

197.   Crouse provided SBA with Brooks' tax records which showed Brooks had 688 employees. (AR280.)

**RESPONSE: Admit, but deny that this is a material fact.**

198.   Brooks is a 501(c)(3) nonprofit hospital, NAICS Code 622110, that received a $4,080,721 PPP loan. (JA2, JA4.)

**RESPONSE: Admit, but deny that this is a material fact.**

199.   Brooks' entire loan was forgiven on August 9, 2021. (AR8.)

**RESPONSE: Admit, but deny that this is a material fact.**

200.    Brooks' forgiveness application was subject to SBA's manual review. (Andrews Dec., ¶ 16 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

201.    SBA produced a true and correct copy of its internal records concerning the review of Brooks' forgiveness application. (*Se* JA14.)

**RESPONSE: Admit, but deny that this is a material fact.**

202.    SBA's records ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (JA18.)

**RESPONSE: Admit, but deny that this is a material fact.**

203.    SBA's records ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (JA15.)

**RESPONSE: Admit, but deny that this is a material fact.**

204.    SBA's October 2023 "Higher Authority Review" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (JA21.)

**RESPONSE: Admit, but deny that this is a material fact.**

205.    The SBA records concerning Carthage stated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (JA26, JA29.) These records include Carthage's loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in reviewing Carthage's forgiveness application. (*See* Andrews Dec., ¶ 20.)

**RESPONSE: Admit, but deny that this is a material fact.**

206.    Crouse provided SBA with Carthage's tax records which showed Carthage had 572 employees. (AR353.)

**RESPONSE: Admit, but deny that this is a material fact.**

207.    Carthage is a 501(c)(3) nonprofit hospital, NAICS Code 622110, that received a $5,448,200 PPP loan. (JA26, JA29.)

**RESPONSE: Admit, but deny that this is a material fact.**

208.    Carthage's entire loan was forgiven on October 19, 2021. (AR8.)

**RESPONSE: Admit, but deny that this is a material fact.**

209.    Carthage's forgiveness application was subject to SBA's manual review. (Andrews Dec., ¶ 20 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

210.    SBA produced a true and correct copy of its internal records concerning the review of Carthage's forgiveness application. (*See* JA38.)

**RESPONSE: Admit, but deny that this is a material fact.**

211.    SBA's records ███████████████████████████████████████ ████████████████████████████████. (JA45.)

**RESPONSE: Admit, but deny that this is a material fact.**

████    SBA's records ████████████████████████████████
████████████████████████████████████████████████████
████████ (JA39.)

**RESPONSE: Admit, but deny that this is a material fact.**

213.    The SBA records concerning Memorial stated ██████████████
███████████████████████████████████████████████████████.

65

(JA134, JA136.) These records include Memorial's loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in approving Memorial's forgiveness application. (*See* Andrews Dec., ¶¶ 13–14 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

214.    Crouse provided SBA with Memorial's tax records which showed Memorial had 511 employees. (AR401.)

**RESPONSE: Admit, but deny that this is a material fact.**

215.    Memorial is a 501(c)(3) nonprofit hospital, NAICS Code 622110, that received a $4,541,220 PPP loan. (JA134, JA136.)

**RESPONSE: Admit, but deny that this is a material fact.**

216.    Memorial's entire loan was forgiven on July 21, 2021. (AR8.)

**RESPONSE: Admit, but deny that this is a material fact.**

217.    Memorial's forgiveness application was not subject to SBA's manual review. (Andrews Dec., ¶ 15 (ECF No. 28-1).)

**RESPONSE: Admit, but deny that this is a material fact.**

218.    SBA's size standard for NAICS Code 622110 is based on annual receipts. 13 C.F.R. § 121.201. There is no standard in number of employees for this industry. *See id.*

**RESPONSE: Paragraph 218 does not constitute a statement of material fact; rather, it is Crouse's characterization of 13 C.F.R. § 121.201, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 218 is denied to the extent it is inconsistent with the terms of the cited regulation.**

**The OIG Borrowers Disclosed by SBA in February 2024**

219.    SBA produced a true and correct copy of its records concerning the loan applications, forgiveness applications, and SBA's manual review of ███████████████ ████ forgiveness applications. (*See* Lanciault Dec., Ex. 2 at 2 ("only two non-profit borrowers . . . were both subject to manual review"); *see* JA206–218.)

**RESPONSE: Admit, but deny that this is a material fact.**

220.    ████████████████████████████████████████████████████ ████████████████████ PPP loan. (JA206, JA211.)

**RESPONSE: Admit, but deny that this is a material fact.**

221.    SBA's size standard for NACIS Code 621610 is based on annual receipts. 13 C.F.R. § 121.201. There is no standard in number of employees for this industry. *See id.*

**RESPONSE: Paragraph 221 does not constitute a statement of material fact; rather, it is Crouse's characterization of 13 C.F.R. § 121.201, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 221 is denied to the extent it is inconsistent with the terms of the cited regulation.**

222.    SBA's records state that ███████████████████████████ ████████████████████████████████████████. (JA206, JA211; *see also* JA216.) These records include ████████████████ loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in approving ███████████ forgiveness application. (*See* JA216.)

**RESPONSE: Admit, but deny that this is a material fact.**

████████████████████████████████████████████████████ ████

67

**RESPONSE: Admit, but deny that this is a material fact.**

224. ██████████ forgiveness application was subject to SBA's manual review. (*See* Lanciault Dec., Ex. 2 at 2.)

**RESPONSE: Admit, but deny that this is a material fact.**

225. SBA's records state that ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████ (JA218.)

**RESPONSE: Admit, but deny that this is a material fact.**

226. The reference to "alternative size standard" and ███████████████ ██████ is a reference to the Alternative Size Standard set forth in 15 U.S.C. § 632(a)(5)(B).

**RESPONSE: Admit, but deny that this is a material fact.**

227. SBA's records ███████████████████████████████████ ███████████████████████. (*See* JA216 ███████████████████ ██████████████████████████████████)

**RESPONSE: Admit, but deny that this is a material fact.**

228. ████████████████████████████████████████████████ █████████████████ (JA219, JA224.)

**RESPONSE: Admit, but deny that this is a material fact.**

229. SBA's records state that ██████████████████████████ ██████████████████████████████████████. (JA219, JA224.) These records include HHMS's loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in approving ██████ forgiveness application.

**RESPONSE: Admit, but deny that this is a material fact.**

230. ████████████████████████████████████████████████

████████

**RESPONSE: Admit, but deny that this is a material fact.**

231. ████████ forgiveness application was subject to SBA's manual review. (*See* Lanciault Dec., Ex. 2 at 2.)

**RESPONSE: Admit, but deny that this is a material fact.**

232. SBA's records ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ (JA239.)

**RESPONSE: Admit, but deny that this is a material fact.**

233. SBA's ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ (JA238.)

**RESPONSE: Admit, but deny that this is a material fact.**

234. SBA's records ████████████████████████████████

████████████████████ (JA238.)

**RESPONSE: Admit, but deny that this is a material fact.**

235. SBA produced a true and correct copy of its records concerning the loan applications, forgiveness applications, and SBA's manual review of the following OIG Borrowers' forgiveness applications:



- ████████████████████████ (JA244–54);
- ████████████████████████ (JA324–59);
- ████████████████████████ (JA295–99);and
- ████████████████████████ (JA300–09).

(*See also* ECF No. 49; ECF No. 54; ECF No. 60; JA242–421.)

**RESPONSE: Admit, but deny that this is a material fact.**

236.    ███████████████████████████████████████████████

██████████████████████████████████. (JA244, JA248, JA 251.)

**RESPONSE: Admit, but deny that this is a material fact.**

237.    SBA's size standards for NAICS Codes 623312 and 623110 are based on annual receipts. 13 C.F.R. § 121.201. There are no standards in number of employees for these industries. *See id.*

**RESPONSE: Paragraph 237 does not constitute a statement of material fact; rather, it is Crouse's characterization of 13 C.F.R. § 121.201, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 237 is denied to the extent it is inconsistent with the terms of the cited regulation.**

238.    SBA's records state that ████████████████████████████████

████████████████████████████████████. (JA244, JA248.) These records include ████████ loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in approving ████████ forgiveness application.

**RESPONSE: Admit, but deny that this is a material fact.**

239.    ████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████

**RESPONSE: Admit, but deny that this is a material fact.**

240.    ████████ forgiveness application was subject to SBA's manual review. (*See* ECF No. 49; ECF No. 54; ECF No. 60.)

**RESPONSE: Admit, but deny that this is a material fact.**

70

241.  SBA's records ███████████████████████████████████

████████████████████ (JA251.)

**RESPONSE: Admit, but deny that this is a material fact.**

242.  SBA's records ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

(JA251.)

**RESPONSE: Admit, but deny that this is a material fact.**

243.  SBA's records ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ (JA252–54.)

**RESPONSE: Admit, but deny that this is a material fact.**

244.  SBA's records ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

(JA250.)

**RESPONSE: Admit, but deny that this is a material fact.**

245.  SBA produced a chart ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████ (*See* JA205.)

**RESPONSE: Admit, but deny that this is a material fact.**

246.  ████████████████████████████████████████████████████

██████████████████████████████████. (JA324, JA330.)

**RESPONSE: Admit, but deny that this is a material fact.**

247.     SBA's size standard for NAICS Code 621111 is based on annual receipts. 13 C.F.R. § 121.201. There is no standard in number of employees for this industry. *See id.*

**RESPONSE: Paragraph 247 does not constitute a statement of material fact; rather, it is Crouse's characterization of 13 C.F.R. § 121.201, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 247 is denied to the extent it is inconsistent with the terms of the cited regulation.**

248.     SBA's records state that ███████████████████████████████ ██████████████████████████████████████. (JA324, JA330.) These records include ████████████ loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in approving ███████████ forgiveness application.

**RESPONSE: Admit, but deny that this is a material fact.**

249.     ████████████████████████████████████████████████ ████████████████████████████. (*See* AR3990, Cell BA308.)

**RESPONSE: Admit, but deny that this is a material fact.**

250.     ████████████ forgiveness application was subject to SBA's manual review. (*See* ECF No. 49; ECF No. 54; ECF No. 60.)

**RESPONSE: Admit, but deny that this is a material fact.**

251.     SBA's records ███████████████████████████████████ ████████████████████████ (JA359.)

**RESPONSE: Admit, but deny that this is a material fact.**

252.    SBA's records ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ (JA359.)

**RESPONSE: Admit, but deny that this is a material fact.**

253.    The reference ████████████████████████████████

████████████████████████████████████ is to the Alternative Size Standard as set forth

in 15 U.S.C. § 632(a)(5)(B).

**RESPONSE: Admit, but deny that this is a material fact.**

254.    SBA's records ████████████████████████████████

███████████████████████ (JA359.)

**RESPONSE: Admit, but deny that this is a material fact.**

255.    SBA produced a chart ████████████████████████

████████████████████████████████████████████████████

███████████████████████████ (*See* JA205.)

**RESPONSE: Admit, but deny that this is a material fact.**

256.    ████████████████████████████████████████████

████████████████████████████████████. (JA295, JA297.)

**RESPONSE: Admit, but deny that this is a material fact.**

257.    SBA's size standard for NAICS Code 611710 is based on annual receipts. 13

C.F.R. § 121.201. There is no standard in number of employees for this industry. *See id.*

**RESPONSE: Paragraph 257 does not constitute a statement of material fact; rather, it is**

**Crouse's characterization of 13 C.F.R. § 121.201, to which the Court is respectfully referred**

**for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 257 is denied to the extent it is inconsistent with the terms of the cited regulation.**

258.    SBA's records state that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (JA295, JA297.) These records include ▮▮▮▮▮▮▮ loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in approving ▮▮▮▮▮▮ forgiveness application.

**RESPONSE: Admit, but deny that this is a material fact.**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**RESPONSE: Admit, but deny that this is a material fact.**

260.    ▮▮▮▮▮▮▮ forgiveness application was subject to SBA's manual review. (*See* ECF No. 49; ECF No. 54; ECF No. 60.)

**RESPONSE: Admit, but deny that this is a material fact.**

261.    SBA's records ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (JA299.)

**RESPONSE: Admit, but deny that this is a material fact.**

262.    SBA produced a chart ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* JA205.)

**RESPONSE: Admit, but deny that this is a material fact.**

74

263. ███████████████████████████████████████████████

████████████████████████████. (JA300, JA304.)

**RESPONSE: Admit, but deny that this is a material fact.**

264. SBA's size standard for NAICS Code 621330 is based on annual receipts. 13 C.F.R. § 121.201. There is no standard in number of employees for this industry. *See id.*

**RESPONSE: Paragraph 264 does not constitute a statement of material fact; rather, it is Crouse's characterization of 13 C.F.R. § 121.201, to which the Court is respectfully referred for a complete and accurate statement of its contents. If a response is deemed necessary, Paragraph 264 is denied to the extent it is inconsistent with the terms of the cited regulation.**

265. SBA's records state that ████████████████████████████████

███████████████████████████████████████. (JA300, JA304.) These records include ██████ loan application and forgiveness application, which were signed under penalty of perjury (*see id.*) and relied upon by SBA in approving ██████ forgiveness application.

**RESPONSE: Admit, but deny that this is a material fact.**

266. ████████████████████████████████████████████████

████████████████████████. (*See* AR3990, Cell BA215.)

**RESPONSE: Admit, but deny that this is a material fact.**

267. ██████ forgiveness application was subject to SBA's manual review. (*See* ECF No. 49; ECF No. 54; ECF No. 60.)

**RESPONSE: Admit, but deny that this is a material fact.**

268. SBA's records ████████████████████████████████████████

██████████████████████████████████████. (JA307.)

**RESPONSE: Admit, but deny that this is a material fact.**

269.   SBA produced a chart ██████████████████████████

████████████████████████████████████████████████████

████████████████   (*See* JA205.)

**RESPONSE: Admit, but deny that this is a material fact.**


Dated: November 8, 2024                    CARLA B. FREEDMAN
                                           United States Attorney


                          By:    *s/ Emer M. Stack*
                                 _____

                                 Emer M. Stack
                                 Assistant United States Attorney
                                 Bar Roll No. 700843