**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CROUSE HEALTH HOSPITAL, INC.**,
736 Irving Ave
Syracuse, NY 13210

        *Plaintiff,*

    v.

**UNITED STATES SMALL BUSINESS**
**ADMINISTRATION**, 409 3rd St., SW,
Washington, DC, 20416;

    *and*

**ISABELLA CASILLAS GUZMAN**, *in her*
*official capacity as Administrator*, U.S. Small
Business Administration, 409 3rd St.,
SW, Washington, DC, 20416

        *Defendants*.

Civil Action No.: 5:23-CV-00615
(BKS/ATB)

---

**Defendants' Local Rule 56.1(a) Statement of Material Facts**

Pursuant to Local Rule 56.1(a), Defendants United States Small Business Administration ("SBA") and Isabella Casillas Guzman, in her official capacity, (collectively, "Defendants") submit the following Local Rule 56.1(a) Statement of Material Facts about which there exists no genuine issue.[1]

---

[1] Citations to filings on the Court's docket are to the pagination generated by CM/ECF. Citations to "JA__" refer to the joint appendix of discovery materials, *see* Dkt. 62-2, and refer to the PDF pagination. Citations to "SBA____" refer to the Certified Administrative Record. Citations to the Declaration of Martin Andrews submitted in connection with Defendants' cross-motion for summary judgment are to the "Andrews Decl."

1

*SBA's Streamlined PPP Loan Origination Process*

1.      Consistent with Congress's intent to meet needs of small businesses for assistance as soon as possible, SBA established a system capable of expeditiously disbursing billions of dollars in PPP loans to millions of borrowers within a matter of months.  *See* Andrews Decl. ¶ 4.

2.      To accomplish this, SBA authorized 848 additional qualified lenders to approve and issue PPP loans. *See* First PPP IFR, 85 Fed. Reg. at 20,815, 20,816; Andrews Decl. ¶ 4.

3.      SBA also established a streamlined PPP loan origination process, in which:

   a.   the usual Section 7(a) underwriting requirements were waived, First PPP IFR at 20,812, 20,815;

   b.   borrowers were allowed to self-certify their eligibility on PPP loan applications submitted to lenders, First PPP IFR at 20,814, 20,815;

   c.   lenders were required to perform a good faith review of, but not verify, borrowers' documents and calculations, and were permitted to rely on borrowers' self-certifications of eligibility; and

   d.   lenders could obtain SBA's guarantee for a loan by certifying (on SBA Form 2484) to SBA that the borrower had made the necessary certifications and had submitted the needed documentation sufficient to (a) demonstrate that it had paid employees and payroll taxes as of February 15, 2020 (as the CARES Act required) and (b) determine its average monthly payroll costs (needed to calculate its qualifying loan amount), First PPP IFR at 20814, 20815-16. 85 Fed. Reg. at 20,812, 20,814-16.

Andrews Decl. ¶ 4.

4.      Under this abbreviated process, lenders were not required to forward borrowers' applications or supporting documentation to SBA, but instead maintained these records in their files. *See* First PPP IFR at 20,814; Andrews Decl. ¶ 5.

5.      As a result, SBA did not (and as a practical matter could not) make independent PPP borrower-eligibility determinations at the loan-origination stage. Andrews Decl. ¶ 5.

2

6. Because time was of the essence in April 2020, for purposes of the PPP, SBA had little choice but to set aside its usual, more thorough underwriting processes in favor of a system, described above, that was dependent on self-certification of eligibility by (in many cases) first-time SBA borrowers, and administered (in many cases) by first-time SBA lenders. *See* Andrews Decl. ¶ 6.

7. Many of these first-time borrowers and lenders lacked familiarity with SBA rules and regulations, such as the newly added rules allowing certain nonprofits to receive PPP loans. Andrews Decl. ¶ 6.

8. The simplified underwriting process that SBA had to rely on to make the PPP function as needed, combined with the large number of first-time SBA borrowers and lenders, created a heightened risk of loans being erroneously approved by lenders. Andrews Decl. ¶ 6.

9. Under the CARES Act, lenders were able to rely on the self-certifications set forth in the respective borrower's PPP application. Andrews Decl. ¶ 7.

10. SBA's First PPP IFR set out the lenders' responsibilities at the application stage, which included (1) confirmation of receipt of borrower certifications contained in the PPP application, (2) confirmation of receipt of information demonstrating that borrower had employees for whom the borrower paid salaries and payroll taxes on or around February 15, 2020, (3) confirming the dollar amount of average monthly payroll costs for the preceding calendar year by reviewing what was submitted with the borrower's application; and (iv) following applicable Bank Secrecy Act ("BSA") requirements. *See* 85 Fed. Reg. 20811, 20815 (April 15, 2020); *see also* Andrews Decl. ¶ 7.

11.    Lenders were not required to confirm the veracity of the borrower's stated number of employees, or any other certifications made by the borrower in the borrower's PPP application.  Andrews Decl. ¶ 7.

12.    After the lender had undertaken the actions set forth in the First PPP IFR, the lender would submit an electronic loan guaranty request to SBA through SBA's electronic transaction system ("E-Tran"), which would then generate a loan number for the respective borrower.  Andrews Decl. ¶ 7.

13.    At the time the loans of the alleged comparator borrowers identified by Crouse were approved by the lender, the only information from the borrower's loan application required to be entered into E-Tran was: the borrower's name, Tax ID, address, primary contact, organizational entity type, and the loan amount. Andrews Decl. ¶ 8.

14.    Some lenders volunteered additional information that was not required to be entered into E-Tran, such as NAICS codes or number of employees. Andrews Decl. ¶ 8.

15.    At the loan origination stage, the lender affirmed that the borrower had made the required certifications in the loan application, including, but not limited to, certifying they were eligible to receive the loan.  Andrews Decl. ¶ 8.

### *SBA's PPP Loan-Review Process*

16.    As a consequence of the streamlined underwriting process, SBA sought to reinforce the fiscal integrity of the program by implementing a robust system of PPP loan reviews at the loan-forgiveness stage, to verify borrowers' eligibility, their qualifying maximum loan amounts, and use of proceeds, and to identify cases of fraud and/or other abuse.  Andrews Decl. ¶ 9.

17.     Shortly after SBA launched the PPP, the agency announced that, in light of the streamlined PPP application and underwriting process, it would undertake review of PPP loans of any size, at any time, in its discretion, to ensure that PPP loans were issued to the entities Congress intended.  Andrews Decl. ¶ 9.

18.     SBA explained further that if it determined in the course of a review that a borrower was ineligible for its PPP loan, it would direct the lender to deny the borrower's forgiveness application. *See* SBA, Business Loan Program Temporary Changes; Paycheck Protection Program-SBA Loan Review Procedures and Related Borrower and Lender Responsibilities, 85 Fed. Reg. 33010, 33012 (June 1, 2020); Andrews Decl. ¶ 9.

19.     As a practical matter, however, SBA did not have the personnel resources to conduct timely manual reviews of each loan approved under the PPP.  Andrews Decl. ¶ 10.

20.     By June 2020, the number of PPP loans that had been approved by lenders already neared 5 million, and by the time the program came to a close in June 2021, the number had grown to nearly 12 million.  Andrews Decl. ¶ 10.

21.     Because it was not feasible to conduct manual forgiveness reviews of all 12 million PPP loans at the forgiveness stage, SBA implemented a two-step process involving automated screening of all loans, followed by manual forgiveness review of select loans. Andrews Decl. ¶ 11.

22.     At the initial automated step of SBA's loan-review process, PPP loans were screened to identify anomalies and attributes that could be indicative of certain, but not all, eligibility and other requirements.  Andrews Decl. ¶ 12.

23.     The purpose of the automated screening process was to maximize program integrity and optimize use of SBA's limited loan-review resources by taking a risk-based

approach to detect then-known and suspected patterns of widespread noncompliance, fraud, and abuse. Andrews Decl. ¶ 12.

24.     At the second step of the process, the loans selected during the automated screening process, as well as a statistical sample of all loans, and loans for which the agency received credible tips from law enforcement, inspectors general, whistleblowers, or the media, underwent manual forgiveness reviews.  Andrews Decl. ¶ 13.

25.     A manual forgiveness review is based on the borrower's PPP loan and forgiveness applications and supporting documentation, and if necessary, additional documentation such as financial statements, tax records, or other records that SBA requested from the borrower through the lender.  Andrews Decl. ¶ 13.

26.     Loans may have been selected for manual forgiveness review based on statistical sampling that SBA also employed as a risk-management tool to enhance program integrity. Andrews Decl. ¶ 14.

27.     As is inherent in any method of statistical sampling, some, but not all, loans were chosen for manual review.  Andrews Decl. ¶ 14.

28.     For the statistical sampling, SBA engaged a contractor which developed a stratified methodology to sample certain higher risk strata of loans at greater rates than their proportion in the overall portfolio.  Andrews Decl. ¶ 14.

29.     The criteria used to create the sample strata included loan size, lender type, two-digit NAICS sector codes, and other factors.  Andrews Decl. ¶ 14.

30.     Loans may have been selected for manual forgiveness review based on "hold codes" (also called "flags") placed on their loans as a result of a one-time statistical analysis and

review of the PPP loan portfolio (as it then existed) performed by another contractor, Dun & Bradstreet ("D&B") in June 2020. Andrews Decl. ¶ 15.

31. SBA's purpose in commissioning the D&B review was to generate statistics concerning borrowers, lenders, and the geographic distribution of loans, among others, to obtain a better understanding of the PPP portfolio as a whole and identify areas of concern requiring greater risk-management efforts (such as automated screening) going forward. Andrews Decl. ¶ 15.

32. To prepare its analysis, D&B gathered information from a variety of internal and public databases, including information concerning borrower eligibility. Andrews Decl. ¶ 15.

33. If following its review D&B referred a loan to SBA due to an unresolved issue of borrower ineligibility, including whether the borrower had possible affiliates, SBA then placed a hold code or flag on the loan. Andrews Decl. ¶ 15.

34. These flagged loans were subjected to manual forgiveness review at the time the borrowers applied for loan forgiveness, and if they were found in fact to be ineligible, their loan forgiveness applications were denied. Andrews Decl. ¶ 15.

35. Among PPP hold codes was Hold Code 2, which indicated a potential bankruptcy. Andrews Decl. ¶ 16.

36. Among PPP hold codes was Hold Code 10, which was placed in November 2020 on all loans of $2 million or more to review the good-faith certification made by PPP borrowers on their loan application that economic uncertainty made the loan request necessary to support ongoing operations, a certification that was included in the SBA Paycheck Protection Program Borrower Application Form (SBA Form 2483 or lender's equivalent). Andrews Decl. ¶ 16.

37.    Based on the results of loan reviews that it had completed, SBA made the determination that audit resources would be more efficiently deployed across all loans if these targeted reviews solely based on Hold Code 10 were discontinued.  Andrews Decl. ¶ 16.

38.    The widespread discontinuation of Hold Code 10 occurred in January 2021. Andrews Decl. ¶ 16.

39.    Among PPP hold codes was Hold Code 15, which indicated a potential ineligible business size.  Andrews Decl. ¶ 16.

40.    Among PPP hold codes was Hold Code 33, which indicated a potential affiliation issue. Andrews Decl. ¶ 16.

41.    Among PPP hold codes was Hold Code 45, which indicated a potential DUNS number issue.  Andrews Decl. ¶ 16.

42.    A DUNS Number is a unique nine-digit identifier for businesses issued by D&B. Andrews Decl. ¶ 16.

43.    SBA used Hold Code 45 in order to identify borrowers that potentially received more than one PPP loan. Andrews Decl. ¶ 16.

44.    For those PPP loans not selected during automated screening or otherwise chosen for manual forgiveness review, SBA remitted the forgiveness payment in the amount requested by the lender in its forgiveness decision submitted to SBA, in a process is referred to as "auto review." Andrews Decl. ¶ 17.

45.    When conducting a manual review of a PPP forgiveness application, SBA Form 3508 ("the Forgiveness Application"), the SBA reviewer focuses solely on the information relevant to that borrower's PPP loan.  Andrews Decl. ¶ 18.

8

46.    Information pertaining to other borrowers is considered only if SBA has reason to believe that the borrowers may be affiliated, such that they should be treated as a single entity for the purpose of determining size eligibility, *see* 13 C.F.R. § 121.301(f), or that the borrowers may be majority-owned by a common parent and thus subject to the aggregate maximum loan amount for members of a single corporate group, *see* 85 Fed. Reg. 26324, 26325 (May 4, 2020). Andrews Decl. ¶ 18.

47.    Information concerning other borrowers that is not relevant to the loan under review for eligibility for forgiveness is not considered.  Andrews Decl. ¶ 18.

### *Crouse's PPP Loan and Proceedings before the Agency*

48.    Crouse applied on August 6, 2020 to its lender for a PPP loan of $10 million, describing itself as a "501(c)(3) nonprofit" with 2,212 employees. *See* SBA003614-18.

49.    Crouse's lender—in contrast to Crouse's description as a nonprofit—indicated Crouse was a "C-Corp" on the lender's application form. *See* SBA003619.

50.    Crouse, through Kevin Randall, its Chief Financial Officer, certified that Crouse "employ[ed] no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. § 121.201 for [Crouse's] industry."[2] SBA003615; *see also* SBA003619.

51.    SBA regulations at 13 C.F.R. § 121.201 indicate that Crouse's NAICS code of 622110 is for General Medical and Surgical Hospitals.  Andrews Decl. ¶ 23.

52.    SBA regulations at 13 C.F.R. § 121.201 also indicate that there is no employee-based size standard for Crouse's NAICS code.  Andrews Decl. ¶ 23.

---

[2] As discussed, Crouse had no employee-based size standard available to it, based on its industry.

53.    Because there is no industry size standard in number of employees applicable to Crouse, Crouse could qualify for a PPP loan only if it had 500 or fewer employees. Andrews Decl. ¶ 23.

54.    The statement—that Crouse employed no more than 500 employees (and all other statements made on Crouse's application)—was certified by Mr. Randall as "true and accurate in all material respects. SBA003615.

55.    Mr. Randall further certified his understanding that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law." SBA003615.

56.    Crouse's lender approved the loan on August 6, 2020, and disbursed the $10 million to Crouse. SBA000508-14.

57.    Crouse completed a PPP Loan Forgiveness Application on November 23, 2021, requesting full forgiveness of the loan. *See* SBA003621-25.

58.    Crouse's loan was flagged for an in-depth manual review at the forgiveness stage, due to two hold codes: Hold Code 33, for a potential affiliation issue, and Hold Code 15, for potential ineligible business size. *See* Andrews Decl. ¶ 24; *see also* SBA000494-96 (Internal Notes referencing hold codes on Crouse's loan).

59.    SBA then reviewed Crouse's loan and solicited additional information about Crouse, including its affiliates, number of locations, and number of persons it employed per location. *See* SBA003599-3610.

60.    During the manual review, Crouse was given an opportunity to demonstrate that it met the increased size eligibility provided by the ARPA Per Location Rule, but because Crouse confirmed that it had more than 500 employees in one location (Crouse Hospital - Main

Campus), it could not benefit from the ARPA Per Location Rule. *See* SBA003633; *see also* Andrews Decl. ¶ 26.

61.    Given Crouse's potential issue with affiliates, SBA also requested Crouse complete a PPP Affiliation Worksheet (SBA Form 3511), the purpose of which was to collect information from a borrower who may have affiliates, in order to evaluate eligibility for a PPP loan. *See* SBA000501; *see also* Andrews Decl. ¶ 25.

62.    In a footnote, the Affiliation Worksheet Form reiterated the existing statutory and regulatory parameters for PPP loan eligibility:

> An applicant can be eligible for a PPP loan under the employee-based size standard if it has no more than 500 employees or if it satisfies the statutory and regulatory definition of a "small business concern" under . . . 15 U.S.C. § 632 . . . . A Business can be eligible under the receipt-based size standard corresponding to its primary industry . . . . A business also can be eligible if it met both tests in SBA's alternative size standard as of March 27, 2020 . . . . *The alternative size standard is available only to for-profit borrowers, not non-profit organizations*.

SBA000503 at n.3 (emphasis added).

63.    Even though the Alternative Size Standard is not available to nonprofits, Crouse indicated that it was relying on the Alternative Size Standard to determine its eligibility. *See* SBA000503.

64.    SBA issued its final loan review decision on October 6, 2022, finding that Crouse was ineligible for its PPP loan because it had 2,212 employees, in excess of the 500-employee size standard applicable to nonprofit organizations. SBA000498-500; *see* Andrews Decl. ¶ 27.

65.    SBA's final loan decision pertaining to Crouse stated that a nonprofit "is ineligible for the Alternative Size standard; therefore, ineligible for PPP funding." SBA000499.

66.     On November 7, 2022, Crouse filed an administrative appeal to the SBA's Office of Hearings and Appeals ("OHA"), and, in support of that appeal, attached IRS Form 990s pertaining to the comparator nonprofit borrowers. SBA000001-471.

67.     In its appeal, Crouse argued, in the main, that the "Alternative Size Standard" applies to nonprofits, and that SBA's decision on Crouse's PPP loan was arbitrary given that other nonprofit hospitals received PPP loan forgiveness. SBA000004-07.

68.     In support of its argument that other nonprofit hospitals had received PPP loan forgiveness, Crouse attached to its appeal various public documents (such as annual reports and IRS Form 990s) purportedly evidencing that those nonprofit hospitals each employed over 500 employees. *See* SBA000029-471.

69.     Opposing relief, SBA argued to OHA, *inter alia*, that nonprofits are not eligible for PPP loans under the Alternative Size Standard, and that Crouse's assertions about the forgiveness status of other borrowers provided no basis for OHA to reverse SBA's final decision as to Crouse. *See* SBA003946-59.

70.     In opposition to Crouse's appeal, SBA also argued that Crouse had failed to "provide any evidence of the circumstances surrounding the alleged forgiveness of the alleged 'similarly situated' organizations, including but not limited to, whether SBA even reviewed the loan forgiveness applications of the alleged similar businesses to determine whether those entities should have received forgiveness." *Id.*

71.     SBA also noted there was no evidence about those purported comparators' internal documentation or status at the time they applied for a PPP loan, or whether they could qualify for a PPP loan on some other basis.  *See* SBA003959.

72. On January 10, 2023, OHA denied Crouse's appeal and affirmed SBA's final loan review decision. SBA003961-74.

73. OHA found Crouse was ineligible for a PPP loan as a nonprofit with over 500 employees. SBA003973.

74. OHA also found that Crouse was not eligible under the Alternative Size Standard because it is not a "small business concern." *See id.*

75. As for the purported comparators, OHA noted that their loan forgiveness status was "not supported by any evidence in the record," and, in any event, lacked any precedential value for Crouse's appeal. *See* SBA003974.

76. Crouse then petitioned for reconsideration of OHA's decision. *See* SBA003975-90.

77. In support of its petition for reconsideration, Crouse submitted—for the first time in the agency proceedings—a spreadsheet reflecting publicly available SBA PPP loan data, filtered by Crouse. *See* SBA003985, SBA003990.

78. Crouse argued that the spreadsheet showed five nonprofit hospitals with over 500 employees each received loan forgiveness. *See* SBA003985.

79. Crouse argued that those other hospitals qualified using the Alternative Size Standard" for small business concerns. *See id.*

80. OHA denied reconsideration on February 16, 2023, reiterating that because Crouse is a nonprofit with over 500 employees it lacked initial PPP loan eligibility. SBA003992-4011.

81. As for the purported comparators, OHA explained that Crouse's "argument that other 'similarly situated' entities have received loan forgiveness is not supported by evidence in

13

the record other than its assertions," and (again) that "most significantly, decisions regarding appeals of other PPP loans are not binding in this matter, as they have no precedential value." SBA004010.

*Purportedly Comparable Nonprofit Hospital Borrowers*[3]

82.     For each one of the five purported comparator nonprofit hospitals, its lender represented to SBA at the loan origination stage, via information the lender submitted to E-Tran, that the hospital employed 500 or fewer employees. *See* Andrews Decl. ¶ 28 (lender represented (a) Memorial employed 450; (b) Brooks employed 344; (c) ENH employed 480; (d) ECMC employed 500; and (e) Carthage employed 436).

83.     It is the lenders, and not SBA, that maintain the borrowers' loan applications in the lenders' files at the loan origination stage. *See* Andrews Decl. ¶ 29.

84.     The lender then submitted information provided by the borrower into E-Tran in order to generate a loan number. *See* Andrews Decl. ¶ 29.

---

[3] Defendants maintain that any facts related to any purported comparators (*see supra* ¶¶ 80-170) are not material to the resolution of the legal issues in this case, which requires the Court to apply a requisite "narrow standard of review" and "assess only whether [SBA's final loan review] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment" as to *Crouse. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 16 (2020) (internal quotations and citations omitted); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). Whether Crouse is eligible for a PPP loan is a pure legal question of statutory interpretation, and SBA's loan decisions as to other PPP borrowers are not material because they do not alter Crouse's eligibility under the relevant statutory scheme. *See generally* Defendants' Memorandum of Law. As such, it is neither appropriate nor necessary for the Court to consider the extra-record materials contained in the joint appendix or any facts arising out of those materials. Nevertheless, Defendants provide the following additional facts based on the purported comparators as necessary to respond to Crouse's arbitrary enforcement argument, and for the sake of completeness in case the Court disagrees with Defendants' position that only facts pertaining to Crouse are "material," and the Court's review should be limited to the certified administrative record. *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 72 (2d Cir. 2022) ("A material fact is one that would 'affect the outcome of the suit under the governing law.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

14

85.     SBA did not review the SBA Form 2483 loan application (or lender's equivalent) at the loan origination stage; rather, SBA was permitted to—and did— rely on the self-certifications of eligibility of the borrower and the information submitted to SBA by the lender. *See* Andrews Decl. ¶ 29.

*Memorial Hospital of William F. and Gertrude F. Jones, Inc.*

86.     The Memorial Hospital of William F. and Gertrude F. Jones, Inc. ("Memorial") applied for a PPP loan of $4,541,220.00 on April 8, 2020, and submitted its PPP Forgiveness Application on June 29, 2021.  *See* JA134-38; Andrews Decl. ¶ 30.

87.     Memorial reported ███████████████████████████████████, *see* JA134, and ███████████████████████████████████, *see* JA136.  *See also* Andrews Decl. ¶ 30.

88.     ████████████████████████████████████████████████████████████ ████████████.  Andrews Decl. ¶¶ 16, 31.

89.     ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.  Andrews Decl. ¶ 32.

90.     Memorial's loan was not selected for manual review ████████████ ██████████████████.  *See* JA139-42; Andrews Decl. ¶ 33.

91.     Memorial's loan was subsequently forgiven through the "auto review" process. Andrews Decl. ¶ 33.

92.     Memorial's Forgiveness Application was processed, and SBA remitted payment in full to the respective lender.  Andrews Decl. ¶ 33.

93.     Given the information SBA received about Memorial in connection with this litigation concerning, *inter alia*, employee size, SBA is undertaking a post-payment review of

this loan and anticipates exercising its available remedies in the event this loan is deemed ineligible for PPP loan forgiveness.  Andrews Decl. ¶ 34.

<u>*Brooks-TLC Hospital Systems, Inc.*</u>

94.    Brooks-TLC Hospital Systems, Inc. ("Brooks") applied for a PPP loan of $4,080,721.00 on April 23, 2020, and submitted its PPP Forgiveness Application on July 22, 2021. *See* JA2-13; Andrews Decl. ¶ 35.

95.    Brooks reported ████████████████████████████████, *see* JA2, and ████████████████████████████████ *see* JA3. *See also* Andrews Decl. ¶ 35.

96.    Brooks' Forgiveness Application ███████████████████████ underwent a manual review which was finalized on August 9, 2021. *See* JA14-18; Andrews Decl. ¶ 36.

97.    ████████████████████████████████████████████████ ████████████████████████████████. Andrews Decl. ¶¶ 16, 37.

98.    ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████. Andrews Decl. ¶ 38.

99.    Based on ████████████████████████████████████, SBA remitted payment in full to the respective lender.  Andrews Decl. ¶ 39.

100.    Given the information SBA received about Brooks in connection with this litigation, SBA is undertaking a post-payment review of this loan and anticipates exercising its available remedies in the event this loan is deemed ineligible for PPP loan forgiveness.  Andrews Decl. ¶ 39.

16

*Eastern Niagara Hospital*

101.    Eastern Niagara Hospital ("ENH") applied for a PPP loan of $5,853,436.00 on June 24, 2020, and submitted its PPP Forgiveness Application on July 17, 2021.  *See* JA77-85; Andrews Decl. ¶ 40.

102.    ENH reported ████████████████████████████████████, and ██ ████████████████████████████████████. *See* JA77, JA80; Andrews Decl. ¶ 40.

103.    ENH's Forgiveness Application ████████████████████ underwent a manual review.  Andrews Decl. ¶ 41.

104.    ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████. Andrews Decl. ¶ 42.

105.    ████████████████████████████████████████████████ ████████████████. Andrews Decl. ¶ 42.

106.    ████████████████████████████████████████████████ ████████████████████████████ Andrews Decl. ¶ 43.

107.    ████████████████████████████████████████████████, SBA remitted payment in full to the respective lender.  Andrews Decl. ¶ 44.

108.    Given the information SBA received about ENH in connection with this litigation concerning, *inter alia*, employee size, SBA is undertaking a post-payment review of this loan and anticipates exercising its available remedies in the event this loan is deemed ineligible for PPP loan forgiveness.  Andrews Decl. ¶ 44.

17

*Erie County Medical Center*

109.    Erie County Medical Center ("ECMC") applied for a PPP loan of $10,000,000.00 on June 9, 2020, and submitted its Forgiveness Application on May 5, 2021.  *See* JA109-28; Andrews Decl. ¶ 45.

110.    ECMC reported ███████████████████████████████, *see* JA109, and ███████████████████████████████ *see* JA114.  *See also* Andrews Decl. ¶ 45.

111.    ECMC's  Forgiveness  Application  ███████████████████████ underwent a manual review. *See* JA129; Andrews Decl. ¶ 46.

112.    ████████████████████████████████



████████████████████████████████

████████████████████████████████

███████████████████████████. Andrews Decl. ¶¶ 16, 47.

113.    ████████████████████████████████

███████████████████████████. *See* JA129; Andrews Decl. ¶ 48.

114.    SBA  ████████████████████████████

████████████████████████████████

███████████ remitted payment in full to the respective lender.   Andrews Decl. ¶ 49.

115.    Given the information SBA received about ECMC in connection with this litigation concerning, *inter alia*, employee size, SBA is undertaking a post-payment review of ECMC's loan and anticipates exercising its available remedies in the event this loan is deemed ineligible for PPP loan forgiveness.  Andrews Decl. ¶ 51.

*Carthage Area Hospital*

116.    Carthage Area Hospital ("Carthage") applied for a PPP loan of $5,448,200.00 on April 20, 2020, and submitted its PPP Forgiveness Application on June 4, 2021.  *See* JA26-37; *see also* Andrews Decl. ¶ 52.

117.    Carthage reported ███████████████████████████████████, *see* JA26, and ████████████████████████████████████, *see* JA29.  *See also* Andrews Decl. ¶ 52.

118.    Carthage's loan underwent a manual review ████████████████████.  *See* JA38; Andrews Decl. ¶ 53.

119.    ████████████████████████████████████████████████████████████████████████████████████████. Andrews Decl. ¶¶ 16, 54.

120.    ████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 55.

121.    ████████████████████████████████████████████████████████ SBA remitted payment in full to the respective lender.  Andrews Decl. ¶ 56.

122.    Given the information SBA received about Carthage in connection with this litigation concerning, *inter alia*, employee size, SBA is undertaking a post-payment review of this loan and anticipates exercising its available remedies in the event this loan is deemed ineligible for PPP loan forgiveness.   Andrews Decl. ¶ 56.

**Purportedly Comparable Nonprofit Borrowers Referenced in the OIG Report**



123. ███████████████████████████████████████████

████████████████████████████████████. Andrews Decl. ¶ 57.

124. ███████████████████████████████████████████

█████████████████████████████████████. *See* JA219; Andrews Decl.

¶ 57.

125. ███████████████████████████████████████████

██████████████████████████. *See* JA219-37; Andrews Decl. ¶ 57.

126. ███████████████████████████████████████████

██████████ Andrews Decl. ¶ 58.

127. ███████████████████████████████████████████

██████████ Andrews Decl. ¶¶ 16, 59.

128. ███████████████████████████████████████████

███████████████████████████████████████████████

██████████ Andrews Decl. ¶¶ 16, 59.

129. ███████████████████████████████████████████

█████████████████████████████████████████. *See* JA239; *see also*

Andrews Decl. ¶ 60.

130. ███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████. Andrews Decl. ¶ 61.



131. ██████████████████████████████████████████████████████████████████████ Andrews Decl. ¶ 61.

132. ██████████████████████████████████████████████. *See* JA206-15; Andrews Decl. ¶ 62.

133. ██████████████████████████. *See* JA206, JA212; Andrews Decl. ¶ 62.

134. ████████████████████████████████████████████████████. Andrews Decl. ¶ 63.

135. ████████████████████████████████████. Andrews Decl. ¶ 64.

136. ████████████████████████. *See* JA218; Andrews Decl. ¶ 65.

137. ████████████████████████████████████████████. *See also* Andrews Decl. ¶ 66.

21



138. ██████████████████████████████████████████

████████████████████████████████████████████████

███████████. Andrews Decl. ¶ 66.

███████████

139. ██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████. *See* JA244-49; *see also* Andrews Decl. ¶ 67.

140. ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████. Andrews Decl.

¶¶ 16, 68.

141. ██████████████████████████████████████████

████████████████████████████████████████████████.

Andrews Decl. ¶ 69.

142. ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████. Andrews Decl. ¶ 70.

143. ██████████████████████████████████████████

████████████████████████████████████████████████

████. *See* JA205, JA243-43; *see also* Andrews Decl. ¶ 71.

22

144.    Unlike Crouse, ████ was able to submit verifiable documentation that, at the time of the PPP loan, it had less than 500 employees per physical location consistent with the ARPA Per Location Rule.  *See* JA242-43; Andrews Decl. ¶ 72.

145.    ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 72.

████████████████████

146.    ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* JA295-98; Andrews Decl. ¶ 73.

147.    ████████████████████████████████████████████████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 74.

148.    ████████████████████████████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 75.

149.    ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* JA299; Andrews Decl. ¶ 76.



150. ███████████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 76.

151. ███████████████████████████████████████████████████████████████████████. *See* JA205, JA242-43; Andrews Decl. ¶ 76.

152. ███████████████████████████████████████████████████████████████████████. *See* JA242-43; Andrews Decl. ¶ 77.

153. ███████████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 77.

███████████████████████████████████

154. ███████████████████████████████████████████████████████████████████████. *See* JA300-06; Andrews Decl. ¶ 78.

155. ███████████████████████████████████████. Andrews Decl. ¶¶ 16, 79.

156. ███████████████████████████████████████. Andrews Decl. ¶¶ 16, 79.

157. ██████████████████████████████████████████████████████

████████████████████████████████████. Andrews Decl. ¶¶ 16, 79.

158. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████. Andrews Decl. ¶ 80.

159. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████. Andrews Decl. ¶ 81.

160. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███. Andrews Decl. ¶ 81.

161. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████. *See*

JA205, JA242-43; Andrews Decl. ¶ 81.

162. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████. *See* JA242-43; Andrews Decl. ¶ 82.

163. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████. Andrews Decl. ¶ 82.



164. ███████████████████████████████████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 83.

165. ███████████████████████████████████████. *See* JA324-58; Andrews Decl. ¶ 83.

166. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. Andrews Decl. ¶¶ 16, 84.

167. ███████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 85.

168. ███████████████████████████████████████████████████ JA359; *see also* Andrews Decl. ¶ 86.

169. ███████████████████████████████████████████████████████████████████. Andrews Decl. ¶ 86.

170. ███████████████████████████████████████████████████████████████████. *See* JA205; Andrews Decl. ¶ 86.

171. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████. *See* JA242-43; Andrews Decl. ¶ 87.

172. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████. Andrews Decl. ¶ 87.

173. ████████████████████████████████████████████

Andrews Decl. ¶ 88.

174. Crouse's PPP Loan Forgiveness application was reviewed under the same methods and procedures as all other PPP forgiveness applicants, including the purported comparator nonprofit hospitals and entities set forth in Crouse's Motion for Summary Judgment. Andrews Decl. ¶ 88.

175. Regardless of any mistakes that SBA may have made in awarding PPP loan forgiveness to other ineligible nonprofits, Crouse was, and remains, ineligible for the PPP loan and forgiveness of its PPP loan. Andrews Decl. ¶ 89.

Dated: November 8, 2024                          CARLA B. FREEDMAN
                                                 United States Attorney


                                         By:     s/ Emer M. Stack
                                                 Emer M. Stack
                                                 Assistant United States Attorney
                                                 Bar Roll No. 700843

27