**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CROUSE HEALTH HOSPITAL, INC.,

                                        Plaintiff,                    5:23-cv-615 (BKS/ATB)

v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION and KELLY LOEFFLER, in her
official capacity as Administrator, U.S. Small Business
Administration,[1]

                                        Defendants.

_____

**Appearances:**

_For Plaintiff:_
Katherine B. Kohn
Thompson Hine LLP
1919 M Street NW, Suite 700
Washington, DC 20036

Brian P. Lanciault, Jr.
Riccardo M. DeBari
Thompson Hine LLP
300 Madison Avenue, 27th Floor
New York, NY 10017

_For Defendants:_
Office of the United States Attorney
Ransom P. Reynolds
Assistant United States Attorney
Emer M. Stack
Assistant United States Attorney
100 South Clinton Street, Suite 900
Syracuse, NY 13261

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the current Administrator of the Small Business Administration, Kelly Loeffler, has been substituted in place of her predecessor. (_See_ Dkt. No. 85).

Hon. Brenda K. Sannes, Chief United States District Judge:

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Crouse Health Hospital, Inc. brings this action against Defendants, the United States Small Business Administration (SBA) and Kelly Loeffler, in her official capacity as Administrator of the SBA,[2] pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). (Dkt. No. 1). Plaintiff seeks judicial review of SBA's decision not to forgive Plaintiff's loan, obtained as part of the Paycheck Protection Program (PPP), and the associated rules upon which SBA based its denial of loan forgiveness as arbitrary, capricious, and contrary to law. (*Id.*). Presently before the Court are Plaintiff's motion for summary judgment, (Dkt. No. 67), and SBA's cross-motion for summary judgment, (Dkt. No. 71). The motions are fully briefed. (Dkt. Nos. 67-1, 71-1, 73, 80). For the reasons that follow, Plaintiff's motion for summary judgment is granted in part and denied in part and SBA's cross-motion is granted in part and denied in part.

## II.    BACKGROUND

### A.    Statutory Background

#### 1.    CARES Act, the PPP, and Subsequent Amendments

Responding to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which became law on March 27, 2020. *See* Pub. L. No. 116-136, 134 Stat. 281 (2020). As part of the CARES Act, Congress created the PPP, a temporary program by which the SBA would guarantee qualifying entities loans and forgive those loans if the funds were used for specified purposes, such as to retain and pay workers. *See*

---

[2] Throughout the opinion, the Court refers to the agency by itself as well as collectively with Administrator Loeffler as "SBA."

CARES Act § 1102. SBA was also charged with issuing regulations to implement the PPP within

15 days and provided with emergency rulemaking authority to do so. *See id.* § 1114.

Congress initially authorized $349 billion in loan commitments to be available through

June 30, 2020. *Id.* § 1102(b)(1). The CARES Act and the PPP were subsequently amended

several times, and Congress ultimately authorized $813.7 billion in PPP loan commitments that

were available through June 30, 2021. *See* American Rescue Plan Act of 2021, Pub. L. No. 117-2

§ 5001(d)(1), 135 Stat. 4, 85; PPP Extension Act of 2021, Pub. L. No. 117-6 § 2(b), 135 Stat.

250, 250.

### 2.    Section 7(a) Loan Framework and the PPP's Changes

In creating the PPP, Congress amended Section 7(a) of the Small Business Act, codified

at 15 U.S.C. § 636(a). *See* CARES Act § 1102(a). Under the pre-existing Section 7(a) general

business loan program, the SBA is empowered "to make loans to any qualified small business

concern." 15 U.S.C. § 636(a). The Small Business Act's definition section defines a small

business concern as an enterprise "which is independently owned and operated and which is not

dominant in its field of operation." *Id.* § 632(a)(1). Further, the Small Business Act provides

SBA with the ability to "specify detailed definitions or standards by which a business concern

may be determined to be a small business concern." *Id.* § 632(a)(2)(A). Among other

requirements, "to be a business concern eligible for assistance from SBA as a small business" the

concern must be "a business entity organized for profit." 13 C.F.R. § 121.105. Also, under the

SBA's rules, to be considered "small," and thus loan eligible, *see id.* § 120.100, the concern must

not exceed the specified maximum number of employees or annual receipts, depending on the

concern's industry as identified by its North American Industry Classification System (NAICS)

code, *see id.* § 121.201.

Additionally, the Small Business Act requires that the SBA Administrator "establish an alternative size standard for applicants with business loans under section 636(a) of this title . . . that uses maximum tangible net worth and average net income as an alternative to the use of industry standards." 15 U.S.C. § 632(a)(5)(A). The provision known as the Alternative Size Standard states:

> Until the date on which the alternative size standard established under subparagraph (A) is in effect, an applicant for a business loan under section 636(a) of this title . . . may be eligible for such a loan if--
> (i) the maximum tangible net worth of the applicant is not more than $15,000,000; and
> (ii) the average net income after Federal income taxes (excluding any carry-over losses) of the applicant for the 2 full fiscal years before the date of the application is not more than $5,000,000.

*Id.* § 632(a)(5)(B). This interim standard, which was enacted as part of the Small Business Jobs Act of 2010, was effective September 27, 2010, and remained in place until March 18, 2024, when a new final rule updating the Alternative Size Standard went into effect. *See* SBA Information Notice 5000-1175; 89 F.R. 11703, 11703–05 (Feb. 15, 2024); 13 C.F.R. § 121.301(b).

The CARES Act placed the PPP within the framework of the Section 7(a) general business loan program and stated that "[e]xcept as otherwise provided," "the Administrator may guarantee covered loans under the same terms, conditions and processes as" Section 7(a) loans. 15 U.S.C. § 636(a)(36)(B) ("Subparagraph B"); *Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 224 (2d Cir. 2021). However, the CARES Act modified the existing Section 7(a) framework for PPP loans in several ways, including by relaxing the eligibility standards to include, *inter alia*, nonprofit organizations. The increased eligibility provision provides:

> During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than the greater of--
> (I) 500 employees; or
> (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.

15 U.S.C. § 636(a)(36)(D)(i) ("Subparagraph D"). Other traditional requirements associated with Section 7(a) general business loans were also waived for the purposes of the program. *See, e.g.*, *id.* § 636(H) (waiving certain fees); *id.* § 636(I) (waiving requirement that business not be "able to obtain credit elsewhere"); *id.* § 636(J) (waiving personal guarantee requirement).

Almost a year after the CARES Act was enacted, Congress passed the American Rescue Plan Act of 2021 ("ARPA"). *See* Pub. L. No. 117-2, 135 Stat. 4. ARPA expanded eligibility for PPP loans to nonprofit organizations that "employ[] not more than 500 employees per physical location of the organization." ARPA § 5001(a)(1)(B)(i) (codified at 15 U.S.C. § 636(a)(36)(D)(iii)(III)(aa)) (the "ARPA Per Location Rule").

**B.    Factual Background[3]**

**1.    Plaintiff's PPP Loan**

Plaintiff is a community hospital located in Syracuse, New York. (Dkt. No. 67-2, ¶ 77; *see* Dkt. No. 71-3, ¶ 77). Plaintiff, who was experiencing financial difficulties both prior to and exacerbated by the COVID-19 pandemic, (Dkt. No. 67-2, ¶¶ 79, 81; *see* Dkt. No. 71-3, ¶¶ 79,

---

[3] The facts are drawn from the parties' statements of material facts, (Dkt Nos. 67-2, 71-4), and their responses, (Dkt. Nos. 71-3, 74), to the extent the facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein. Plaintiff's reply to SBA's response to Plaintiff's statement of material facts, (Dkt. No. 75), is considered part of its opposition brief materials. The Court uses "R." when citing the Administrative Record and "JA" when citing the Joint Appendix of Discovery Materials ("Joint Appendix").

81), applied for a $10 million PPP loan, (*see* R. 3614–18). Plaintiff's loan application identified

itself as a "501(c)(3) nonprofit" and disclosed that it employed 2,212 employees. (R. 3614). The

form also contained a provision requiring the applicant to certify it "employ[ed] no more than the

greater of 500 or [sic] employees or, if applicable, the size standard in number of employees

established by the SBA in 13 C.F.R. § 121.201 for the Applicant's industry." (R. 3615).[4]

Plaintiff's NAICS code is 622110 (General Medical and Surgical Hospitals), which does not

have an employee size standard. (Dkt. No. 71-4, ¶¶ 51–52; *see* Dkt. No. 74, ¶¶ 51–52). The

application was signed by Kevin Randall, CFO, and was dated August 6, 2020. (R. 3615). The

loan was approved on August 6, 2020, and People's United Bank, N.A. ("Plaintiff's Lender")

disbursed $10 million to Plaintiff the following day. (*See* R. 508–14, 3621).[5]

       Plaintiff submitted a loan forgiveness application, signed by Randall and dated November

23, 2021, requesting forgiveness of the entire loan. (R. 3621–25). In the course of reviewing

Plaintiff's loan, SBA requested additional information and documentation from Plaintiff and

Plaintiff's Lender in letters dated November 26, 2021, March 7, 2022, March 14, 2022, April 8,

2022, May 12, 2022, and June 6, 2022. (R. 3597–609). The SBA transmitted a letter to Plaintiff's

Lender dated July 25, 2022, explaining that it was considering a recommendation to deny

Plaintiff loan forgiveness and requesting a response within 20 business days. (R. 3610–13). As

its explanation, the letter indicated Plaintiff had more than 500 employees and stated that "First

Draw PPP Loans are available for qualifying tax exempt nonprofit organizations described in

section 501(c)(3) of the Internal Revenue Code (IRC) . . . that have 500 or fewer employees or

---

[4] Plaintiff has stated that "SBA published a single form application (Form 2483) for all PPP borrowers to use, regardless of entity type, which contains the quoted certification. Thus, all borrowers made this certification, even those with more than 500 employees that SBA claims were free to use different size standards." (Dkt. No. 74, ¶ 50).

[5] People's Bank, N.A. is now known as M&T Bank. (*See* Dkt. No. 67-2, ¶ 84).

meet the SBA employee-based size standards for the industry in which they operate." (R. 3611).

The letter also referred to "Published Guidance," and cited a portion of SBA's first interim final

rule on the PPP, originally published on April 2, 2020:

> 1. Am I eligible?
> You are eligible for a PPP loan if you have 500 or fewer employees
> whose principal place of residence is in the United States, or are a
> business that operates in a certain industry and meet the applicable
> SBA employee-based size standards for that industry, and:
> i. You are:
> A. A small business concern as defined in section 3 of the Small
> Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules
> under 13 CFR 121.301(f) unless specifically waived in the Act; or
> B. A tax-exempt nonprofit organization described in section
> 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt
> veterans organization described in section 501(c)(19) of the IRC,
> Tribal business concern described in section 31(b)(2)(C) of the
> Small Business Act, or any other business; and
> ii. You were in operation on February 15, 2020 and either had
> employees for whom you paid salaries and payroll taxes or paid
> independent contractors, as reported on a Form 1099-MISC.

(R. 3611–12); *see also* Business Loan Program Temporary Changes; Paycheck Protection

Program, 85 Fed. Reg. 20811 (Apr. 15, 2020).

The letter then referred to the SBA's Frequently Asked Questions document regarding

PPP loans, specifically "Question 2."[6] After acknowledging that Plaintiff's loan application was

made after the publication of Question 2, the letter states that "the Frequently asked Question

document 'does not carry the force and effect of law independent of the statute and regulations

on which it is based.' Thus, refer to the published program guidance." (R. 3612).[7] The letter

---

[6] Although the letter referred to "Frequently Asked Question 6/25/2022," (R. 3612), the Court assumes this is a reference to the version of the FAQs published June 25, 2020, as there does not exist a version of the FAQs that was published on June 25, 2022.

[7] Question 2 of the Frequently Asked Questions document, as published on June 25, 2020, explained that "small business concerns (as defined in Section 3 of the Small Business Act, 15 U.S.C. 632)" could qualify for the Alternative Size Standard. Paycheck Protection Loans Frequently Asked Questions (FAQs), available at https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf. ("Question: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers in the PPP? Answer: No. Small

continues, "[w]ith that being said, a non-profit must meet the 500/300 employee based size standard (per location). If the total number of employees represents multiple locations, please provide a list of employee counts per location." (*Id.*).

Plaintiff responded to the SBA, stating that "Crouse Health Hospital Inc. believes we were eligible to receive the PPP loan under the alternative size standard noted in the FAQs published on 6/25/20, and because the funds were 100% spent on payroll the loan should be forgiven" and explaining its reasoning. (R. 3276). In a letter dated October 6, 2022, SBA issued a letter stating that it "ha[d] determined that the borrower was ineligible for the PPP loan" because "[a]fter review of the documentation provided, the SBA concludes the Borrower business, or together with its affiliates, exceeds the maximum number of employees and the SBA small business size standards." (R. 498). The letter's reasoning continued:

> It is confirmed this borrower, Crouse Health Hospital Inc., affiliation family "Crouse Health Hospital et al", has a total of 2212 employees, which exceeds the 500-employee size standard for a non-profit organization. . . . A Non-Profit is ineligible for the Alternative Size standard; therefore, ineligible for PPP funding.

(R. 498–99).

On November 7, 2022, Plaintiff filed an appeal of SBA's decision to the Office of Hearings and Appeals (OHA), arguing that SBA's decision should be reversed because: (1) the Alternative Size Standard applies to nonprofits; (2) SBA's interpretation of the law was not

---

business concerns can be eligible borrowers even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards. Additionally, a business can qualify for the Paycheck Protection Program as a small business concern if it met both tests in SBA's 'alternative size standard' as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million. A business that qualifies as a small business concern under section 3 of the Small Business Act, 15 U.S.C. 632, may truthfully attest to its eligibility for PPP loans on the Borrower Application Form, unless otherwise ineligible.").

entitled to deference; and (3) a decision to uphold SBA's denial would be arbitrary and capricious. (R. 1–9). With respect to Plaintiff's argument that upholding SBA's decision would be arbitrary and capricious, Plaintiff identified five "organizations similarly situated," that were granted PPP loan forgiveness despite having more than 500 employees. (R. 7–8). Plaintiff attached documents (one annual report and four IRS Form 990s) indicating each of these organizations had more than 500 employees. (R. 10–471).

The SBA filed a response to Plaintiff's appeal on January 3, 2023. (R. 3946–59). In that response, SBA argued that "[n]onprofit organizations are not eligible to qualify for PPP under the alternative size standard," relying on the language of the CARES Act, as codified at 15 U.S.C. § 636(a)(36)(D), the First Interim Rule, and SBA FAQs 2 and 3.[8] (R. 3954–58). Responding to Plaintiff's argument that SBA's denial was arbitrary and capricious, SBA characterized the argument as "speculative at best," and argued: (1) that Plaintiff "failed to provide any evidence of the circumstances surrounding the alleged forgiveness of the alleged 'similarly situated' organizations, including but not limited to, whether SBA even reviewed the loan forgiveness applications of the alleged similar businesses to determine whether those entities should have received forgiveness; (2) that "SBA has broad authority to conduct loan reviews" and that "SBA regulations governing the forgiveness and review of loans under the PPP

---

[8] Question 3 of the Frequently Asked Questions document, as published on June 25, 2020, states: "Question: Does my business have to qualify as a small business concern (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) in order to participate in the PPP? Answer: No. In addition to small business concerns, a business is eligible for a PPP loan if the business has 500 or fewer employees whose principal place of residence is in the United States, or the business meets the SBA employee-based size standards for the industry in which it operates (if applicable). Similarly, PPP loans are also available for qualifying tax-exempt nonprofit organizations described in section 501(c)(3) of the Internal Revenue Code (IRC), tax-exempt veterans organization described in section 501(c)(19) of the IRC, and Tribal business concerns described in section 31(b)(2)(C) of the Small Business Act that have 500 or fewer employees whose principal place of residence is in the United States, or meet the SBA employee-based size standards for the industry in which they operate." Paycheck Protection Loans Frequently Asked Questions (FAQs), available at https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf.

provide that SBA may undertake a review of a PPP loan of any size 'at any time in SBA's discretion'"; (3) that Plaintiff "argues that the listed entities have more than 500 employees without any knowledge of their internal documentation and status at the time they applied for a PPP loan or if they are eligible under another standard"; and (4) that Plaintiff "has provided no information or evidence demonstrating that SBA's conclusion . . . was incorrect." (R. 3958–59).

OHA issued a decision affirming SBA's decision to deny Plaintiff loan forgiveness on January 10, 2023. (R. 3961–74). In the decision, OHA referred to the text of the CARES Act's increased eligibility provision, codified at 15 U.S.C. § 632(a)(5)(B), as well as FAQ Question 3. (R. 3972–73). Like SBA, OHA rejected Plaintiff's contention that it could rely on the Alternative Size Standard because "it is not a business operating for profit," stated that as a nonprofit, "its eligibility is further premised on meeting the requirement that its employee size not exceed 500," and explained that "[t]he record also clearly shows that it does not meet that further criterion for loan eligibility." (R. 3973). Additionally, the decision found that Plaintiff's "argument that other 'similarly situated' entities have received loan forgiveness is not supported by any evidence in the record" and that "[a]dditionally, and most significantly, decisions regarding appeals of other PPP loans are not binding in this matter, as they have no precedential value." (R. 3974 (citation omitted)).

Plaintiff requested reconsideration of OHA's decision by filing a petition on January 18, 2023. (R. 3975–89). The petition argued that "OHA's conclusion that, as a nonprofit, Crouse is not eligible for a PPP loan under the Act is clearly erroneous, as neither the Act nor any SBA regulations support that conclusion." (R. 3981; *see* R. 3982–84). The petition further made the point that "OHA did not take into account the abundance of evidence that other nonprofit hospitals in New York meet neither the employee nor industry size standards, but received PPP

loan forgiveness, and does not address why these other entities should be treated differently under the applicable law than Crouse." (R. 3981; *see* R. 3984–86).[9] With respect to the second point, Plaintiff's petition referenced an attached excel spreadsheet indicating "that at least 365 nonprofits with over 500 employees received SBA loan forgiveness." (R. 3986).[10]

On February 16, 2023, Plaintiff's petition for reconsideration was denied relying in large part on the same reasoning that OHA articulated in its previous decision. (*See* R. 3992–4011).

### C.    Additional Nonprofits Applying for PPP Loans

#### 1.    Nonprofit Hospitals

Plaintiff identified five 501(c)(3) nonprofit hospitals with the same NAICS Code as Plaintiff, which had received PPP loan forgiveness in its OHA appeal. (*See* R. 7–8; *see also* Dkt. No. 67-2, ¶¶ 180, 189, 198, 207, 215; Dkt. No. 71-3, ¶¶ 180, 189, 198, 207, 215). These hospitals included: Erie County Medical Center Corporation ("ECMC"), Eastern Niagara Hospital ("ENH"), Brooks-TLC Hospital System, Inc. ("Brooks-TLC"), Carthage Area Hospital ("CAH"), and Memorial Hospital of William F. and Gertrude F. Jones.[11] ("Memorial"). (R. 7–8).

##### a.    ECMC

ECMC received a $10 million PPP loan, which was forgiven on July 23, 2021. (Dkt. No. 67-2, ¶¶ 180–81; *see* Dkt. No. 71-3, ¶¶ 180–81). At the time of its loan application, ECMC reported having 3,911 employees, and at the time it applied for loan forgiveness, ECMC reported

---

[9] Plaintiff also argued that "the OHA Decision adopted the SBA's statements of fact regarding whether relevant documents are in the Administrative Record and whether Crouse responded to the SBA's inquiries, which the Administrative Record itself establishes are clearly inaccurate," (R. 3982; *see* R. 3986–88), but this argument is not relevant for the present dispute.

[10] While Plaintiff's Petition for Reconsideration references this document, the actual excel spreadsheet does not appear to be contained in the Administrative Record. (*See* R. 3990 (containing cover sheet labeled "Exhibit 1 to PFR Excel Spreadsheet")).

[11] Plaintiff appeared to misspell the name of this entity as "Hospital of William F. and Gertrud F. Jones." (R. 8). However, the correct name of the entity is stated above. (*See* R. 401).

having 3,791 employees. (Dkt. No. 71-4, ¶ 110; Dkt. No. 74, ¶ 110). According to SBA's

records, ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ (Dkt. No. 67-2, ¶¶ 185–86 (quoting JA 128);

*see* Dkt. No. 71-3, ¶¶ 185–86). SBA has stated that "[g]iven the information SBA received about

ECMC in connection with this litigation concerning, *inter alia*, employee size, SBA is

undertaking a post-payment review of ECMC's loan and anticipates exercising its available

remedies in the event this loan is deemed ineligible for PPP loan forgiveness." (Dkt. No. 71-4, ¶

115).

      **b.**     **ENH**

     ENH received a $5,853,436 PPP loan, which was forgiven on August 2, 2021. (Dkt. No.

67-2, ¶¶ 189–90; *see* Dkt. No. 71-3, ¶¶ 189–90). At the time of its loan application, ENH

reported having 480 employees, and at the time it applied for loan forgiveness, ENH reported

having 378 employees. (Dkt. No. 71-4, ¶ 102; Dkt. No. 74, ¶ 102). SBA's records ███████████

████████████████████████████████████████████████████████

████████████████████████████████████ (Dkt. No. 67-2, ¶ 194

(quoting JA 86); *see* Dkt. No. 71-3, ¶ 194). The records also indicated that an October 2023

"Higher Authority Review" ████████████████████████████████████████████

███ (Dkt. No. 67-2, ¶ 195 (citing JA 93); *see* Dkt. No. 71-3, ¶ 195). SBA has stated that

"[g]iven the information SBA received about ENH in connection with this litigation concerning,

*inter alia*, employee size, SBA is undertaking a post-payment review of this loan and anticipates

exercising its available remedies in the event this loan is deemed ineligible for PPP loan

forgiveness." (Dkt. No. 71-4, ¶ 108).

### c.    Brooks-TLC

Brooks-TLC received a $4,081,721 PPP loan, which was forgiven on August 9, 2021. (Dkt. No. 67-2, ¶¶ 198–99; *see* Dkt. No. 71-3, ¶¶ 198–99). At the time of Brooks-TLC's loan application, it reported having 344 employees, and at the time it applied for loan forgiveness, Brooks-TLC reported having 365 employees. (Dkt. No. 71-4, ¶ 95; Dkt. No. 74, ¶ 95). SBA's records ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (Dkt. No. 67-2, ¶ 203 (quoting JA 14); *see* Dkt. No. 71-3, ¶ 203). The records also indicated that an October 2023 "Higher Authority Review" ██████████████████████████ ████████████████████████████ (Dkt. No. 67-2, ¶ 204 (citing JA 20–21); *see* Dkt. No. 71-3, ¶ 204). SBA has stated that "[g]iven the information SBA received about Brooks[-TLC] in connection with this litigation, SBA is undertaking a post-payment review of this loan and anticipates exercising its available remedies in the event this loan is deemed ineligible for PPP loan forgiveness." (Dkt. No. 71-4, ¶ 100).

### d.    CAH

CAH received a $5,448,200 PPP loan, which was forgiven on October 19, 2021. (Dkt. No. 67-2, ¶¶ 207–08; *see* Dkt. No. 71-3, ¶¶ 207–08). At the time of CAH's loan application, it reported having 436 employees, and at the time it applied for forgiveness, CAH reported having 485 employees. (Dkt. No. 71-4, ¶ 117; Dkt. No. 74, ¶ 117). SBA's records ███████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████ (Dkt. No. 67-2, ¶ 212 (quoting JA 38); *see* Dkt. No. 71-3, ¶ 212). SBA has stated that "[g]iven the information SBA received about [CAH] in connection with this litigation, *inter alia*, employee size, SBA is

13

undertaking a post-payment review of this loan and anticipates exercising its available remedies in the event this loan is deemed ineligible for PPP loan forgiveness." (Dkt. No. 71-4, ¶ 122).

e.      **Memorial**

Memorial received a $4,541,220 PPP loan, which was forgiven on July 21, 2021. (Dkt. No. 67-2, ¶¶ 215–16; *see* Dkt. No. 71-3, ¶¶ 215–16). At the time of its loan application, Memorial reporting having 450 employees, and at the time it applied for loan forgiveness, Memorial reported having 467 employees. (Dkt. No. 71-4, ¶ 87; Dkt. No. 74, ¶ 87). SBA has stated that "[g]iven the information SBA received about Memorial in connection with this litigation concerning, *inter alia*, employee size, SBA is undertaking a post-payment review of this loan and anticipates exercising its available remedies in the event this loan is deemed ineligible for PPP loan forgiveness." (Dkt. No. 71-4, ¶ 93).

2.      **OIG Borrowers**

During the course of discovery in this case, SBA produced records to Plaintiff regarding other borrowers identified in a September 26, 2022 Report of the SBA Inspector General ("OIG Report"). (*See* Text Minute Entry 12/20/23). Each of these entities is a 501(c)(3) nonprofit organization that reporting having more than 500 employees at the time it applied for a PPP loan and could not qualify for a PPP loan under an employee-based industry size standard. (*See* Dkt. No. 67-2, ¶¶ 220, 222, 228–29, 236, 238, 246, 248, 256, 258, 263; Dkt. No. 71-3, ¶¶ 220, 222, 228–29, 236, 238, 246, 248, 256, 258, 263; JA 336; 13 C.F.R. § 121.201). These entities received PPP loans and received loan forgiveness. (*See* Dkt. No. 67-2, ¶¶ 220, 223, 228, 230, 236, 239, 246, 249, 256, 259, 263, 266; Dkt. No. 71-3, ¶¶ 220, 223, 228, 230, 236, 239, 246, 249, 256, 259, 263, 266).

### III.    STANDARD OF REVIEW

In reviewing agency decisions under the Administrative Procedure Act, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. Moreover, "agency actions, findings, and conclusions" that the reviewing court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" shall be held "unlawful and set aside." *Id.* § 706(2)(A).

In determining whether an agency acted contrary to law, "agency interpretations of statutes . . . are not entitled to deference." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024). Rather, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 412. This is different from the APA's arbitrary and capricious standard, which only "requires that agency action be reasonable and reasonably explained. Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency. A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (citations omitted); *see also Magellan Tech., Inc. v. United States Food & Drug Admin.*, 70 F.4th 622, 628 (2d Cir. 2023) ("Agency action is 'arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).

IV.     **CONSIDERATION OF EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORD**

    A.     **Joint Appendix**

The SBA argues that the Court should decline to consider the additional evidence generated in discovery, contained in the Joint Appendix, as it is beyond the scope of the Administrative Record and therefore both unnecessary and inappropriate for the Court to consider. (Dkt. No. 71-1, at 41–42). Plaintiff responds that the issue of supplementing the record with the evidence contained in the Joint Appendix was previously decided by Magistrate Judge Baxter and by failing to object to or appeal the Court's decision, SBA has waived this argument. (Dkt. No. 73, at 12). Plaintiff also reiterates Magistrate Judge Baxter's reasoning that it was appropriate to provide additional evidence for the Court's consideration because of SBA's demonstrated bad faith. (*Id.* at 13). In response, SBA draws a distinction between Magistrate Judge Baxter's order for "the parties to engage in limited discovery," in contrast to determining "the appropriate scope of judicial review," and argues that Magistrate Judge Baxter "made clear that the appropriate scope of the record for review in this APA matter was ultimately for this Court to decide." (Dkt. No. 80, at 11–12).

    "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Safe Haven Home Care, Inc. v. United States Dep't of Health & Human Servs.*, 130 F.4th 305, 324 (2d Cir. 2025) (quoting *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997)). "There are, however, limited circumstances under which the admission of extra record evidence 'may be appropriate.'" *Id.* (quoting *Nat'l Audubon Soc'y*, 132 F.3d at 14). These include: (1) "when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers," *id.* (quoting *Nat'l Audubon Soc'y*, 132 F.3d at 14); (2) "where the absence of

formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice," *id.* (quoting *Nat'l Audubon Soc'y*, 132 F.3d at 14); and (3) "when 'the district court need[s] to supplement the record with background information in order to determine whether the agency considered all of the relevant factors,'" *id.* (quoting *American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).

Here, Magistrate Judge Baxter made a finding that SBA engaged in bad faith. (Dkt. No. 31, at 51 ("I find that the SBA's efforts to essentially hide the ball at the administrative appellate stage when Crouse proffered substantial evidence of SBA's inconsistent application of the alternative size standards reflects bad faith."); *see generally id.* at 49–51). On this basis, the Court ordered that Plaintiff was justified in seeking additional discovery. (*Id.* at 51).

SBA is correct that, under usual circumstances, a reviewing court is limited to the administrative record before it. *See Safe Haven Home Care, Inc.*, 130 F.4th at 324. But SBA ignores Magistrate Judge Baxter's finding that the usual circumstances are not present here. Further, SBA fails to point to a case where a Court found additional discovery was justified but the Court ultimately declined to review that additional discovery. (*See generally* Dkt. No. 71-1, at 41–42; Dkt. No. 80, at 10–12). Consequently, the Court finds it is appropriate, based on Magistrate Judge Baxter's previous finding of bad faith (which SBA did not appeal), to review the additional evidence in the Joint Appendix.

### B.    Second Andrews Declaration

Plaintiff argues that the Court should disregard a declaration from Martin F. Andrews (the "Second Andrews Declaration") that SBA submitted in support of its motion for summary judgment. (Dkt. No. 73, at 26–28). Plaintiff asserts that the declaration should not be considered because Andrews was "not 'involved in the [decision] process' for Crouse's loan review or for any of the 11 similarly situated borrowers." (*Id.* at 27 (quoting *DACO Investments, LLC v.*

*United States Small Bus. Admin.*, No. 22-cv-1444, 2024 WL 750594, at *12, 2024 U.S. Dist. LEXIS 33763, at *31 (W.D. La. Feb. 22, 2024))). Additionally, Plaintiff argues that "the Court should reject the Second Andrews Declaration because (1) it introduces a new rationale; (2) contradicts SBA's records; and (3) is undermined by evidence of bad faith." (*Id.* at 28). SBA responds, stating that the Second Andrews Declaration "provides essential context for understanding SBA's PPP loan origination and review processes during an unprecedented global pandemic, and the circumstances surrounding the loans of 11 ostensibly similar nonprofits on which Crouse's selective enforcement argument rests." (Dkt. No. 80, at 13–14).

Martin Andrews is "the Deputy Director, Office of Financial Program Operations ("OFPO"), in the Office of Capital Access of" SBA. (Dkt. No. 71-2, ¶ 1). In his declaration, he "address[es] the process undertaken by SBA to review PPP loan forgiveness applications generally, Plaintiff's PPP loan forgiveness application specifically, as well as the process undertaken to review the PPP loan forgiveness applications of the purported comparators that Plaintiff has identified." (*Id.* ¶ 3). He states that he "was directly involved with the establishment of SBA's process for loan forgiveness review of PPP loans and continue[s] to be directly involved in the oversight of that process." (*Id.* ¶ 1). Further, he explains that "[t]he facts attested to [in the declaration] are based on [his] personal knowledge or on information made available to [him] in [his] position as Deputy Director of OFPO." (*Id.* ¶ 2).

The Court agrees with SBA that the Second Andrews Declaration provides important context for understanding SBA's loan forgiveness process and the specific loans at issue and thus is the type of "background information" the Court may consider in evaluating whether all the relevant factors were taken into account. *See Safe Haven Home Care, Inc.*, 130 F.4th at 324. The Second Andrews Declaration also adequately addresses his knowledge of the relevant issues. To

the extent the Court cites to facts contained in Defendants' Local Rule 56.1(a) Statement of

Material Facts that rely on the Second Andrews Declaration, the Court notes that such facts are

all undisputed (except as to materiality or relevance) and either (a) appear to be within the

personal knowledge of Deputy Director Andrews or (b) are supported by additional record

evidence.

## V.    DISCUSSION

### A.    Contrary to Law

Plaintiff argues that under the CARES Act, a nonprofit may qualify for a PPP loan using

the Alternative Size Standard, in addition to qualifying pursuant to Subparagraph D. (Dkt. No.

67-1, at 26–38; Dkt. No. 73, at 13–24). SBA opposes this interpretation of the CARES Act,

instead contending that Subparagraph D is the exclusive mechanism by which a nonprofit may

qualify for a PPP loan. (Dkt. No. 71-1, at 35–41; Dkt. No. 80, at 4–9).

At issue here is a question of statutory interpretation. "Every exercise in statutory

construction must begin with the words of the text." *New York Legal Assistance Grp. v. Bd. of

Immigr. Appeals*, 987 F.3d 207, 216 (2d Cir. 2021) (quoting *Saks v. Franklin Covey Co.*, 316

F.3d 337, 345 (2d Cir. 2003)). "The words of the text to be interpreted are not considered alone,

however. Instead, we 'look[] to the statutory scheme as a whole and plac[e] the particular

provision within the context of that statute.'" *Id.* (quoting *Saks*, 316 F.3d at 345).

As the Second Circuit has stated and which is clear from the text of the PPP itself, "[t]he

PPP was not created as a standalone program but was added into the existing § 7(a) program,

which subjects it to existing conditions and regulations, as well as existing SBA authority."

*Pharaohs*, 990 F.3d 217 at 227 (quoting *In re Gateway Radiology Consultants, P.A.*, 989 F.3d

1239, 1256 (11th Cir. 2020)); *see* 15 U.S.C. § 636(a)(36)(B) ("Except as otherwise provided in

this paragraph, the Administrator may guarantee covered loans under the same terms, conditions,

and processes as a loan made under this subsection."). As a result, absent the CARES Act directly specifying otherwise, the default assumption would be that nonprofits, which regulations establish are ineligible for Section 7(a) business loans, *see* 13 C.F.R. §§ 120.100, 121.105, would also be ineligible for PPP loans. *See Pharaohs*, 990 F.3d at 226–28 (rejecting argument that Subparagraph D allows adult-entertainment businesses, that are otherwise ineligible from receiving Section 7(a) loans under SBA's prurience restriction, to receive PPP loans).

However, the CARES Act *does* specify otherwise. The CARES Act added eligibility for certain other entities "in addition to small business concerns," in Subparagraph D, including "any business concern, nonprofit organization, housing cooperative, veterans organization or Tribal business concern" if the entity "employs not more than the greater of" 500 employees or "if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates." 15 U.S.C. § 636(a)(36)(D). Accordingly, SBA cannot bar nonprofits from receiving PPP loans if they conform with Subparagraph D's requirements.

But the CARES Act says nothing about the ability of nonprofits to use the Alternative Size Standard, which is contained in 15 U.S.C. § 632(a)(5) under the definition of a "small business concern." Plaintiff's reading, which attempts to define eligibility for a PPP loan by starting with the text of the Alternative Size Standard, is backwards, as the CARES Act requires understanding the existing rules and *then* seeing where the CARES Act specifically modifies them. *See Pharaohs*, 990 F.3d at 227 ("[T]he context in which Congress created the Program included longstanding regulatory limits on SBA loan eligibility."). Thus, under the background rules that remain in place underlying the Section 7(a) program, the Alternative Size Standard is

20

not available to nonprofits, and absent explicit authorization in the CARES Act or a change in SBA's regulations, Plaintiff was not free to rely on it.

Plaintiff makes several assertions supporting its interpretation of the CARES Act. First, Plaintiff argues that the CARES Act "eliminated prohibitions on nonprofits obtaining SBA business loans for purposes of PPP loans." (Dkt. No. 67-1, at 27). But this reading, which is critical to Plaintiff's interpretation, (*see e.g.*, Dkt. No. 67, at 35–36; Dkt. No. 73, at 21–24), is inconsistent with the text of Subparagraph B, which explicitly allows SBA to continue to "guarantee covered loans under the same terms, conditions, and processes" "*except* as otherwise provided" in the paragraph. *See* 15 U.S.C. § 636(a)(36)(B). And Subparagraph D only contradicts SBA's general regulations barring nonprofits from receiving business loans under particular circumstances: nonprofits are only eligible if they have no more than 500 employees or if the nonprofit meets the employee-based industry size standard.

Next, Plaintiff argues "the CARES Act made no change to the Alternative Size Standard." (Dkt. No. 67-1, at 28). Here, the Court agrees, but notes that Plaintiff confuses the consequences of Congress' inaction. By leaving in place the Alternative Size Standard, Congress preserved it as a tool for certain entities to use, but that does not mean that the CARES Act authorized other entities who were previously ineligible to use it to now do so. Plaintiff's position would have merit if, for example, Congress in the CARES Act redefined the phrase "small business concerns" to include nonprofits for the purpose of the PPP, but that is not what Congress did here. *See* 15 U.S.C. § 636(a)(36)(D) ("in *addition* to small business concerns, any business concern, nonprofit organization . . . " (emphasis added)).

Likewise, the waiver of the "no credit elsewhere" requirement, which Plaintiff argues demonstrates that Congress could have amended the Alternative Size Standard to exclude its

applicability to nonprofits, (*see* Dkt. No. 67-1, at 29–30), is consistent with the understanding that absent explicit say-so, all background statutory provisions and rules under Section 7(a) remained in place. Plaintiff's propositions that "[s]urely if Congress intended to alter the Alternative Size Standard . . . it would [have said] so" and "[t]hat Congress had no intent to affect the Alternative Size Standard is only fortified by its silence while explicitly waiving other Section 7(a) rules," (*id.*), support the argument that had Congress wanted to make the Alternative Size Standard available to nonprofits, it would have done so expressly.

Plaintiff argues its conclusion, that "nonprofits may be eligible for PPP loans under the Alternative Size Standard," is sound for several reasons. (*Id.* at 30–31). Addressing them briefly, none of them meaningfully challenge the above analysis. Plaintiff's first and third reasons, that "no provision of the CARES Act contradicts, or is rendered meaningless by, this construction," and that "this construction does not yield absurd results for other Section 7(a) loans," (*id.*), are not affirmative reasons to prefer Plaintiff's interpretation. Plaintiff's second reason, that "the text of the Alternative Size Standard is [] consistent," (*id.* at 31), also ignores that the CARES Act did not displace all restrictions on the ability of nonprofits to access PPP loans. Plaintiff's fourth argument, that "this construction aligns with the purpose of the PPP," (*id.*), is irrelevant if, as here, the construction is belied by the text of the CARES Act and the statutory context within which it exists.

Finally, Plaintiff's additional arguments, (*see id.* at 31–38), which focus on reasons why SBA's asserted position is incorrect, themselves largely fail to address the issues described above, rest on incorrect assumptions now rejected, or are irrelevant to the Court's interpretation of the statute. The Court does not address them further.

In sum, the Court finds that the CARES Act did not statutorily authorize nonprofits to use the Alternative Size Standard.

### B.    Arbitrary and Capricious

Plaintiff argues that SBA's decision to deny it loan forgiveness was arbitrary and capricious because, unlike Plaintiff, other similarly situated nonprofit organizations were permitted to use the Alternative Size Standard or other grounds not authorized by the CARES Act, and SBA refused to explain what justified the difference in treatment. (Dkt. No. 67-1, at 38–46). SBA denies that the identified entities are similarly situated, and argues that even if they are, this does not entitle Plaintiff to loan forgiveness. (No. 71-1, at 42–49).

"[T]he great principle that like cases must receive like treatment is . . . black letter administrative law." *Think Food Group v. Jaddou*, 762 F. Supp. 3d 377, 394 (D. Vt. 2025) (quoting *Grayscale Invs., LLC v. Sec. & Exch. Comm'n*, 82 F.4th 1239, 1245 (D.C. Cir. 2023)). "Failing to distinguish prior orders in similar cases . . . fails to satisfy the APA's reasoned decisionmaking requirement." *Id.* (quoting *Grayscale Invs., LLC*, 82 F.4th at 1245).

### 1.    Purported Similarly Situated Entities

At the agency appeal stage, Plaintiff named five organizations, ECMC, ENH, Brooks-TLC, CAH, and Memorial, that, based on publicly available data, were also nonprofits with over 500 employees in either 2019 or 2020. (*See* R. 7–8). SBA's records ███████████████ ███████████████████████████████████████████████████ ██████████ and reported the same NAICS code as Plaintiff. (*See* JA 3, 20, 80, 93, 108, 113, 128). However, unlike Plaintiff, each of these entities received PPP loan forgiveness. (*See supra* Part II.C.1). And unlike Plaintiff, ███████████████████████████████████ ███████████████ (*See* JA 128).

Plaintiff has also identified ██ other organizations from SBA's productions that were nonprofits with over 500 employees and were not able to qualify under an employee-based industry size standard. (*See* Dkt. No. 67-1, at 43; *see also supra* Part II.C.2). Here too, these entities received PPP loan forgiveness, and SBA's production ███████████████████

████████████████████████████████████. (*See* JA 254, 286–90, 395).[12]

████████████████████████████████████████████ (*see* JA 275, 335, 343), which the CARES Act does not explicitly authorize nonprofits to use under Subparagraph D, *see* 15 U.S.C. § 636(a)(36)(D)(i).

### 2. SBA's Justifications for Disparate Treatment

SBA argues that the borrowers Plaintiff identifies are not similarly situated because either (a) they may have received loan forgiveness by mistake or (b) they are eligible under the ARPA Per Location rule. (Dkt. No. 71-1, at 42–49).

First, with respect to the issue of mistake, SBA states that "any mistake SBA may have made in awarding PPP loan forgiveness to ineligible nonprofits does not oblige SBA to make the same mistake for Crouse." (*Id.* at 43). *See Chem-Haulers, Inc. v. I.C.C.*, 565 F.2d 728, 730 (D.C. Cir. 1977) ("The mere fact that the Commission may have nodded on one occasion does not entitle a litigant to a repetition of its blunder."); *Texas Int'l Airlines, Inc. v. C.A.B.*, 458 F.2d 782, 785 (D.C. Cir. 1971) ("Assuming that the Government made a mistake . . . in the application of the regulation, the law does not require the Government to perpetuate the mistake."). SBA essentially argues that some mistakes in the PPP process were unavoidable, stating that "the

---

[12] ████████████████████████████████████████████████ (*See* JA 395). SBA does not dispute this. (*See* Dkt. No. 71-3, ¶ 253 (██████████████████████████████ )).

urgent need for SBA to extend billions of dollars of economic relief to small businesses without delay during an unprecedented global pandemic meant that SBA had to dispense with its usual loan-origination requirements and underwriting procedures in favor of a highly streamlined process that—unfortunately—created a heightened risk of loans being erroneously sought by borrowers and approved by lenders" and that "SBA simply lacked the resources to manually review and scrutinize at the forgiveness stage each one of the nearly 12 million PPP loans, means that some PPP borrowers may have received forgiveness for loans that they were not entitled to receive." (Dkt. No. 71-1, at 43–44; *id.* at 45 ("Even when acting diligently, an agency inevitably makes mistakes—and the chance of error only grows with a program's size.")). SBA also explains that it "has confirmed that it will re-review (or currently is re-reviewing) the loans of" the five nonprofit hospitals ███████████████████████ (*Id.* at 44).

Second, SBA argues that four of the OIG borrowers "are further not similarly situated to Crouse because they qualify for a PPP loan under the ARPA Per Location Rule." (*Id.* at 47). SBA states that such a justification is not "an impermissible 'post-hoc' rationalization" because "whether SBA made a mistake in initially approving these borrowers' forgiveness applications is not dispositive, (*id.* at 48), relying on the principle that "[i]t is black-letter law that an agency that takes superseding action . . . is entitled to 'reexamine[] the problem, recast its rationale and reach[] the same result,'" (*id.* (quoting *Biden v. Texas*, 597 U.S. 785, 813 (2022))).

### 3.    Sufficiency of the Rationale

In its appeal to OHA, Plaintiff presented reasonable evidence that other nonprofit hospitals with more than 500 employees had received PPP loan forgiveness. (*See* R. 7–9). SBA's response brief called the argument "speculative at best" and criticized Plaintiff for "fail[ing] to provide any evidence of the circumstances surrounding the alleged forgiveness of the alleged 'similarly situated' organizations." (R. 3958–59). OHA's decision on appeal responded to

Plaintiff's concerns regarding its dissimilar treatment only by stating that "Appellant's argument that other 'similarly situated' entities have received loan forgiveness is not supported by any evidence in the record," (R. 3974), and that "[a]dditionally, and most significantly, decisions regarding appeals of other PPP loans are not binding in this matter as they have no precedential value," (*id.* (quoting 13 C.F.R. § 134.1211(e))).

In its petition for reconsideration, Plaintiff again discussed the five nonprofit hospitals, pointing out that, according to "SBA's own data, each of these hospitals have over 500 employees," and that "SBA's own data indicates that each of these organizations are in the same industry" as Plaintiff. (R. 3985–86). Additionally, Plaintiff appeared to direct SBA to an attached spreadsheet indicating "at least 365 nonprofits with over 500 employees received SBA loan forgiveness." (R. 3986). Rather than explaining why, at a minimum, the other five nonprofits were granted loan forgiveness while Plaintiff was not, OHA again repeated its previous two-sentence response to Plaintiff's concern almost word for word, stated that the decisions regarding other PPP loans "were not given any weight in the initial OHA decision or in this decision, nor should they be," and characterized Plaintiff as "attempt[ing] to establish that decisions in other PPP loan matters not the subjects of appeals have precedential value in this petition." (R. 4010).

Then, in response to Plaintiff's discovery motion, SBA provided a reason why the purported comparators were not similarly situated. (*See* Dkt. No. 28, at 18–20). There, SBA argued that while Plaintiff's "loan was manually reviewed and a had a hold code, due to potential affiliates and eligibility issues," "[n]o other purported comparator was similarly situated in that regard, and so they were not subject to the same in-depth review and therefore received loan

forgiveness." (*Id.* at 20).[13] Further, SBA stated that "each of those borrowers' lenders had represented to SBA that they had 500 or fewer employees," which "SBA was entitled to rely on." (*Id.*).

All of this contrasts with SBA's current position, which, in the face of evidence that certain borrowers did appear to receive loan forgiveness based on the Alternative Size Standard, appears to acknowledge, without *fully* admitting,[14] that SBA made a mistake in providing loan forgiveness to at least some of the entities Plaintiff named. (*See, e.g.*, Dkt. No. 71-1, at 43 ("[A]ny mistake SBA *may* have made in awarding PPP loan forgiveness to ineligible nonprofits does not oblige SBA to make the same mistake for Crouse.") (emphasis added); *see generally id.* at 42–49; Dkt. No. 80, at 17–22).

The Court agrees with Plaintiff that the agency's final response was arbitrary and capricious. SBA's insistence that it was not required to explain to Plaintiff "why the nonprofit comparators received forgiveness" because this was not the basis of the decision against Plaintiff, (*see* Dkt. No. 80, at 16–17), ignores the agency's obligation to explain why seemingly alike entities received different treatment once Plaintiff raised the issue. *See Republic Airline Inc. v. U.S. Dep't of Transp.*, 669 F.3d 296, 300 (D.C. Cir. 2012) ("[W]here, as here, 'a party makes a significant showing that analogous cases have been decided differently, the agency must do more than simply ignore that argument.'" (quoting *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004)). In this instance, rather than explaining the reason for the disparate treatment

---

[13] Plaintiff contests that all of the comparators can be distinguished from Plaintiff on this basis. (*See* Dkt. No. 73, at 36–38). As SBA appears to no longer assert this position in its briefing on summary judgment, it has not been addressed further here.

[14] ███████████████████████████████████████ (*See* Dkt. No. 71-4, ¶¶ 129, 136, 159). Additionally, while SBA has insisted its repeated acknowledgment that the possibility for mistake makes its positions in this litigation consistent, (*see* Dkt. No. 80, at 17–18), this is not equivalent to acknowledging that mistakes definitively occurred.

when presented with meaningful evidence in Plaintiff's appeal and again in its petition for reconsideration, the agency chose to brush off Plaintiff's concerns. Such action is not in accordance with the law. *See MomoCon, LLC v. Small Bus. Admin.* ("*MomoCon I*"), No. 21-cv-2386, 2022 WL 22940750, at *5 (D.D.C. Feb. 10, 2022) ("SBA's failure to explain why it treated MomoCon differently than other potentially similar companies renders SBA's decision arbitrary and capricious."); *see also Concert Investor, LLC v. Small Bus. Admin.*, 616 F. Supp. 3d 25, 29 (D.D.C. 2022), *vacated on other grounds* 100 F.4th 215 (D.C. Cir. 2024) (finding agency's response to the plaintiff's identification of seven similarly situated entities who had, unlike the plaintiff, received certain funds to be sufficient where agency had explained in its denial letter that four of the agencies "provided client services that [the plaintiff] did not provide" and that for the other three, "the agency stated it was reexamining them and would rescind them if they were improperly made").

In light of comparator evidence which, if it does not definitively prove, at least *strongly suggests* that similarly situated entities (including the hospital nonprofits and certain OIG borrowers) received loan forgiveness in contrast to SBA's stated policy, SBA eventual acknowledgement at this stage in the litigation that these *may* be mistakes does not save the agency's previous action from being inadequately explained at the agency level. SBA's further explanation that some of these entities qualified for forgiveness under the ARPA Per Location Rule is likewise inadequate, as (1) this explanation only applies to four of the eleven entities and (2) such an explanation does not address why the four entities were *initially* approved for loan forgiveness, ███████████████████████████████████████

███████████████████████

Additionally, while SBA does not need to have completed recission of any mistakenly issued funds at this stage, its insistence that "re-review is underway for certain nonprofits' loans, and that SBA anticipates exercising its available remedies (including clawback) if those loans are ineligible for PPP loan forgiveness," (*see* Dkt. No. 80, at 19), appears far more non-specific and speculative than what other courts have found to be acceptable action to correct any disparate treatment. *See MomoCon, LLC v. Small Bus. Admin.*, No. 21-2386, 2023 WL 8880335, at \*11, 2023 U.S. Dist. LEXIS 228855, at \*28–30 (D.D.C. Dec. 22, 2023) (finding agency's update about the recoupment process to be sufficient where SBA provided specific information about where the agency was in the recoupment process); *Concert Investor, LLC*, 616 F. Supp. 3d at 36 (finding SBA adequately remedied disparate treatment where SBA completed reconsideration of competitors' eligibility, determined it made mistakes, and referred entities to a recoupment program); *see also MomoCon I*, 2922 WL 22940750, at \*5 n.2 ("Rescission of funds granted to MomoCon's competitors would moot this ground for challenging the denial of MomoCon's application, but mere uncertain plans to do so in the future do not.").

The Court acknowledges that it appears very likely, based on SBA's representations and the Court's review of the record, that the difference in treatment can be explained by mistake. But Plaintiff was still owed a meaningful explanation addressing the disparate treatment which the agency has not yet given. The Court will therefore vacate SBA's final decision on Plaintiff's loan forgiveness claims, and remand to the agency to provide a new decision, supplementing the record as needed. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on

the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for summary judgment, (Dkt. No. 67), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendants' motion for summary judgment, (Dkt. No. 71), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that this case is **REMANDED** to the SBA for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: <u>July 30, 2025</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge